**VIANDS et al.**

v.

**SAFEWAY STORES, Inc.**

**No. 1505.**

Municipal Court of Appeals for the District of Columbia.

Argued June 21, 1954.

Decided July 28, 1954.

Earl H. Davis, Washington, D. C., for appellants.

Thomas S. Walsh, with whom Mr. Cornelius Doherty, Washington, D. C., was on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Among the grocery stores operated by appellee Safeway is one at 1330 D Street, N. E. On each side of that store Safeway has a parking lot from which its customers must cross a paved public sidewalk which leads up to the front door of the store, which is the only entrance or exit for use of shoppers. One evening in October 1952 Mr. and Mrs. Viands followed this course in going to the store to do some shopping. Photographs in the record reveal that the store has a flat front consisting of masonry and glass, and the doorway is not flush with the rest of the building, but is set back or re-

3.  Baltimore & O. R. Co. v. Boyd, 67 Md. 32, 10 A. 315; Irwin v. Nolde, 176 Pa. 594, 35 A. 217, 35 L.R.A. 415.

4.  52 Am.Jur., Trespass, § 49.

cessed somewhat from the front line of the building proper. It is fitted with double swinging doors. When they entered the store the entranceway was unobstructed, but Mrs. Viands did notice "about six" small coaster or delivery wagons on the sidewalk, close to the store window. A half hour later, having completed their shopping and each of them carrying two large bags of groceries, they started to leave the store, Mrs. Viands walking ahead of her husband. When she had taken one step out of the store and while one foot was still within the doorway, she tripped over a small metal delivery wagon which was standing on the sidewalk immediately in front of the door or doorway and which had not been visible to her as she opened the door to leave the store. She sued for her injuries and Mr. Viands sued for medical expenses and other damages personal to him.

There was testimony that Safeway had for a long time been having trouble with boys congregating within the store itself soliciting patrons for deliveries; that the store had had "several" complaints from customers about this; that some two months earlier Safeway had engaged the services of a special guard who worked on Fridays and Saturdays, and whose duty it was to keep the boys out of the store. The manager had at times counted as many as twenty boys on the inside of the store and as many as thirty on the outside. He said he had given instructions to the special guard to keep the boys out of the store but "couldn't do anything with them" on the sidewalk in front of the store; that "the guard has no jurisdiction beyond the store and its only means of getting rid of the boys is to call the Metropolitan Police."

The jury's verdict was in favor of defendant store and plaintiffs have brought this appeal, contending that the trial judge improperly instructed the jury. In his charge, after some general instructions and others as to the general duty of an invitor, the judge told the jury, "I want to tell you

there can be no duty imposed on the defendant in this or any other case of this type with respect to space over which the defendant has no control and no legal opportunity for control." He then also instructed them:

"No liability can be imposed upon the defendant simply because of the hazardous condition existing upon the public street outside of the store. The defendant had no dominion and no control over the public street and could not lawfully have exercised any dominion over the public street. Therefore no duty can be imposed upon the defendant Safeway Stores in this case with respect to the maintenance of the street or the conditions that exist upon the street.

"On the other hand the defendant store does have a duty to use reasonable care to maintain the entrances and exits to its store to the extent it has control over them, as I have indicated to you, to maintain those entrances and exits in a reasonably safe condition." [1]

This language was also repeated to the jury when they asked for further instructions.

■ We must rule that these instructions did not accurately state the law applicable to this situation, especially as it referred to the matter of control. There is nothing novel or extraordinary surrounding the duty of an invitor to use care with reference to exits, entrances, and approaches to his premises. As long ago as 1881, the United States Supreme Court, speaking through Justice Harlan, stated the rule, "founded in justice and necessity and illustrated in many adjudged cases in the American courts" that an owner or occupant of land is liable to an invitee "for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public or

1. Though the judge several times used the word "street" he must have meant the sidewalk provided for pedestrians and not the vehicular highway ordinarily known as a street.

to those who were likely to act upon such invitation." Bennett v. Louisville and N. R. Co., 102 U.S. 577, 580, 26 L.Ed. 235. Later cases have laid down the same rule as to the duty to protect an invitee using approaches to the invitor's property. Blaine v. United States, D.C.E.D.Tenn., 102 F.Supp. 161; Rankin v. S. S. Kresge Co., D.C.N.D.W. Va., 59 F.Supp. 613, affirmed, 4 Cir., 149 F. 2d 934; Sexton v. Brooks, 39 Cal.2d 153, 245 P.2d 496; Flint River Cotton Mills v. Colley, 71 Ga.App. 288, 30 S.E.2d 426 (based on State statute); Perl v. Cohodas, Peterson, Paoli, Nast Co., 295 Mich. 325, 294 N.W. 697; Evans v. Sears, Roebuck & Co., Mo.App., 104 S.W.2d 1035.[2] And it has been specifically held that the duty to properly maintain approaches to an invitor's property is not to be determined by the exact boundaries of the premises, and that such duty does not end at the door through which the invitee makes his exit. Cannon v. S. S. Kresge Co., 233 Mo.App. 173, 116 S.W.2d 559. In our search of the authorities we have found two recent cases, close to our factual situation. In Horner v. Penn Fruit Co., 1951, 169 Pa.Super. 473, 82 A.2d 313, 314, several boys with small express wagons had usually congregated on the sidewalk in front of a food market and one of them caused his wagon to collide with and injure a customer. Affirming a judgment for plaintiff and citing Restatement, Torts, § 318, the court held the storekeeper liable and said that he had made no persistent effort to control the activities of the boys in an orderly fashion and must be held to have permitted a condition to continue, "a condition which involved a reasonable probability that an accident was likely to occur and did occur." In Atterbury v. Temple Stephens Co., 1944, 353 Mo. 5, 181 S.W.2d 659, 663, the manager of a store unrolled some woven mesh wire onto the concrete walk in front of the store. A customer emerging from the store tripped on the wire and fell. He sued the store owner and the manager. The jury exonerated the manager, but awarded damages against the store owner. Affirming both judgments the court pointed out that the corporate defendant, owner of the store, would be liable even if a stranger had placed the wire in front of the store, "provided it had reasonable time in which to ascertain and warn, and failed to do so." We realize that the facts of that case are different from those before us, since it was an employee of defendant who placed the obstruction in front of the store, and it was claimed that another employee was preceding the plaintiff and was in a position to give him a warning. But the decision was not made to turn on that point; the court ruled that the store had a separate duty to warn plaintiff of the danger and that "the failure to warn is as important as placing the wire on the sidewalk."

Many decisions have dealt with the duty of an invitor to protect his invitees from injury by the negligent and intentionally harmful acts of third persons. It has generally been held that the invitor is liable if he has not taken reasonable and appropriate measures to restrict the conduct of third parties of which he should have been aware and should have realized was dangerous. Edwards v. Hollywood Canteen, 27 Cal.2d 802, 167 P.2d 729; Hughes v. St. Louis National League Baseball Club, 359 Mo. 993, 224 S.W.2d 989, 16 A.L.R.2d 904; Fimple v. Archer Ballroom Co., 150 Neb. 681, 35 N.W.2d 680; Tyrrell v. Quigley, 186 Misc. 972, 60 N.Y.S.2d 821; Boardman v. Ottinger, 161 Or. 202, 88 P.2d 967.

This view is also reflected in Restatement, Torts, § 348, where it is said that an invitor is liable to a business invitee for injury caused by the accidental negligence or intentionally harmful acts of third persons if the invitor by the exercise of reasonable care could have (a) discovered that such acts were being done or *were about to be done,* and (b) protected the invitee by controlling the conduct of the third persons or

2. Dealing generally with entrances and exits see also Great Atlantic & Pacific Tea Co. v. McLravy, 6 Cir., 71 F.2d 396; Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609. Cf. Chesapeake & O. Ry. Co. v. Clayton & Lambert Mfg. Co., 6 Cir., 188 F.2d 68; Knowles v. Great Atlantic & Pacific Tea Co., 287 Mass. 400, 192 N.E. 2.

giving a warning adequate to enable him to avoid the harm.

We think the instructions to the jury on the subject of negligence should have included something along the following lines: That plaintiff was an invitee or business customer of defendant store; that the store was not an insurer of plaintiff's safety, but that plaintiff had a right to assume that the store owner had control over the premises or the ability to employ adequate measures for her protection from foreseeable dangers,[3] not only while she was in the store itself but also while she was using the exit doorway and the approach thereto; that it was for the jury to say whether the defendant had properly and sufficiently discharged its duty in that respect; that in deciding that question they should consider what had been testified to concerning the problem of the boys having on earlier occasions congregated inside the store itself and later in front of the premises; that they should also consider the step taken by the store in hiring a guard to keep the boys out of the store, and whether that action and the occasional calling of a policeman amounted to the exercise of reasonable care in the protection of plaintiff and other customers from foreseeable dangers—specifically, the danger that a boy or his wagon might be at or in the doorway in the path of a customer leaving or entering the store; that if the defendant could by the exercise of reasonable care have discovered such potential hazard, it had the duty to give plaintiff a warning adequate to enable her to avoid it; and that if the jury found that the conduct of the store owner amounted to a failure to use ordinary care, and such failure on its part was a proximate cause of plaintiff's injuries, defendant should be held liable therefor.

Appellee relies on Norville v. Hub Furniture Co., 59 App.D.C. 29, 32 F.2d 420, 421,

where a store owner was held not liable to one who after leaving the store slipped on snow and ice on the sidewalk. But there, applying the common law rule, the court observed that the fall "was occasioned by conditions arising from a very severe snowstorm, and not from any default in appellee's conduct or defect in its property." Here the fall took place while the customer still had one foot inside the doorway and appellee's negligence was directly charged as the cause of the fall. Hence that decision is not here applicable.

Nor is this situation governed by decisions involving a spot on a floor, F. W. Woolworth Co. v. Williams, 59 App.D.C. 347, 41 F.2d 970, or a substance like a string bean on a floor, Brodsky v. Safeway Stores, Inc., D.C.Mun.App., 41 A.2d 514, affirmed, 80 U.S.App.D.C. 301, 152 F.2d 677, where it was held that a plaintiff cannot prevail unless he shows that the spot or other substance was present on the floor under such circumstances and for such a period of time as to result in actual or constructive notice to the storekeeper. Here we are dealing with a wholly different situation. Here involved is not an inanimate thing like a spot, discoverable only by routine inspections, but a situation fraught with continuing danger, or so at least the jury could have found. A group of agile, scurrying and troublesome boys equipped with wagons were known to be assembled at the very front of the store. They were also known to have maneuvered themselves in front of appellee's customers intent on the privilege of hauling bundles. One of such wagons was actually maneuvered in such a position as to trip a customer before she had even left the store. We cannot agree with appellee that a store owner has no duty of care in such a situation.

Reversed with instructions to award a new trial.

---

3. Watford by Johnston v. Evening Star Newspaper Co., D.C.Cir., 211 F.2d 31.