354 A.2d 507 (1976)
Tacy COOK, Appellant,
v.
SAFEWAY STORES, INC., Appellee.
No. 8259.
District of Columbia Court of Appeals.
Argued November 21, 1974.
Decided March 16, 1976.
Robert W. Rifkin, Washington, D. C., with whom A. Slater Clarke, Washington, D. C., was on the brief, for appellant.
William D. Appler, Washington, D. C., with whom Edward J. Lopata, Washington, D. C., was on the brief, for appellee.
Before REILLY, Chief Judge, and KERN and YEAGLEY, Associate Judges.
REILLY, Chief Judge:
This is an appeal from an order directing a verdict for defendant, Safeway Stores, Inc., in an action by a customer (appellant here) to recover damages for personal injuries incurred while shopping at one of defendant's retail outlets. The motion on which the court acted was made and granted after appellant's counsel had made his opening statement.
In her pretrial deposition, appellant testified that she was picking up groceries one evening in a Safeway store in the Waterside Mall, in the southwest sector of the city, when a stranger (with two companions) snatched her wallet from her shopping cart. Appellant yelled, "What are you doing? You are trying to steal my wallet."
As she said this, she stepped up to the thief and his companions and seized his *508 arm. He dropped the wallet, wrenched his arm away, and moved rapidly toward the exit. Appellant picked up the wallet and noticed that a $20 bill which had been in it was missing. Calling out that the man was a thief, she pursued him to the checkout counter and grabbed his arm; whereupon he turned, struck appellant in the face with his fist, and ran from the store. The store manager and his assistant (who found on the floor and returned to appellant the missing $20 bill), immediately appeared and called the police. Appellant was then taken by an ambulance to George Washington University Hospital, where she was treated and released. She was then living in an apartment about two blocks from the store.
When the trial began, counsel for appellant on opening statement declared that appellant patronized the store because it was the only supermarket in the vicinity close to her home and also because the store employed security guards upon whom appellant relied for protection, but that on the particular night no security guards were present. Counsel offered to prove that the store is located in a high crime area and that similar incidents had occurred there and in the adjacent streets. Accordingly, counsel argued that the stored owed appellant a duty to provide such guard service, that its failure to do so caused her to be injured, and that such assaults upon their patrons were foreseeable by management. On Safeway's motion for a directed verdict, the trial court ruled that even if the facts alleged were proved, there was no cause of action.
As appellant concedes, the rule in this jurisdiction is that a trial court does have the power to direct a verdict for the defendant after hearing only the plaintiff's opening statement. Williams v. City Stores Company, D.C.App., 192 A.2d 534 (1963); Custer v. Atlantic & Pacific Tea Co., D.C.Mun.App., 43 A.2d 716 (1945). This is a power, however, which must be exercised sparingly.
To warrant the court in directing a verdict for defendant upon that statement, it is not enough that the statement be lacking in definiteness, but it must clearly appear, after resolving all doubts in plaintiff's favor, that no cause of action exists. [Best v. District of Columbia, 291 U.S. 411, 415-16, 54 S.Ct. 487, 489, 78 L.Ed. 882 (1934).]
Consequently, we concur in appellant's contention that the directed verdict cannot stand unless the opening statement disclosed that, accepting all the facts presented as true, recovery on any ground was precluded.
But even applying this rigid test, we are not persuaded that the trial court committed error. As we recently observed in Graham v. Safeway Stores, Inc., D.C. App., 316 A.2d 852, 853 (1974):
The grocer is not an insurer of the customer's safety; however, he will be held liable if he has not taken reasonable and appropriate measures to restrict the conduct of third parties which he should have been aware of and should have realized was dangerous. . . .
In that case, a child was injured when pushed against a store window which was already broken. We held that management was under no duty to foresee and protect the plaintiff from such incidents, distinguishing the situation from one involving a group of unruly and troublesome boys, whose presence on the premises in plain view of the Safeway staff was "fraught with continuing danger." Viands v. Safeway Stores, D.C.Mun.App., 107 A.2d 118, 121 (1954).
We think the circumstances of the present case bring it within the Graham rule rather than Viands, which appellant views as controlling, as it is apparent that the immediate cause of plaintiff's injury, a rash attempt on the part of a customer physically to restrain a purse-snatcher from fleeing the scene of the crime, was not one *509 which the storekeeper could be expected to anticipate.
It is the position of appellant that even though this precise incident might not have been foreseeable, the likelihood of such crimes as the robbery and molestation of customers occurring in the part of the store to which the public was admitted, was sufficiently great so as to require the stationing of guards there at all times. The employment of guards on some previous occasions is cited as an implied admission by management of awareness of the continuing existence of such dangers and a correlative duty to protect its patrons accordingly.
In our opinion, appellant would have us infer too much from the fact that certain banking and retail establishments do hire guards, for their primary duty is not to guard against harm to customers but to deter robbers from holding up cashiers and to curb shoplifting. In other words, whatever protection business visitors to a bank or shop derive from the presence of guards is merely incidental.
This court is all too familiar through daily police reports of the high incidence throughout the entire city of such crimes as mugging, purse-snatching, assault and robbery  a constant hazard to all law-abiding persons who use the streets and public places of business. But simply because this hazard exists, it does not follow that the common law of negligence imposes an obligation upon private enterprises to provide armed guards to insure the safety of persons invited to do business with them.
Courts in other jurisdictions addressing the issue raised by appellant in similar context have almost uniformly declared that there is no such obligation. In Maryland, where the courts look to the same common law as the District for guidance,[1] its highest court recently considered and rejected the very argument that appellant makes here, Nigido v. First National Bank of Baltimore, 264 Md. 702, 288 A.2d 127 (1972). In that case, a customer of a bank sued to recover damages from the bank resulting from his being wounded by gunshot when three armed robbers entered the bank to hold up the tellers. He alleged that the bank was negligent in failing to have guards on them to prevent "foreseeable" robberies. The court disposed of this allegation by saying:
The allegation that this robbery was "foreseeable" is supported only by the further allegation that there is a "history of bank robberies at the said location." But even if it could be said that the robbery was foreseeable it does not follow that the shooting of a customer was foreseeable. [Nigido v. First National Bank of Baltimore, supra at 704, 288 A. 2d at 128.]
For similar reasons, the Supreme Court of Wisconsin denied recovery to a shopper who was knocked to the floor by a shoplifter in the course of avoiding pursuit. Radloff v. National Food Stores, Inc., 20 Wis.2d 224, 121 N.W.2d 865 (1963). We agree with the rationale of these holdings and the observation of the highest appellate court in another jurisdiction:
Everyone can foresee the commission of crime virtually anywhere and at any time. If foreseeability itself gave rise to a duty to provide "police" protection for others, every residential curtilage, every shop, every store, every manufacturing plant would have to be patrolled by the private arms of the owner. And since hijacking and attack upon occupants of motor vehicles are also foreseeable, it would be the duty of every motorist to provide armed protection for his passengers and the property of others. Of course, none of this is at all palatable.
The question is not simply whether a criminal event is foreseeable, but whether a duty exists to take measures to *510 guard against it. Whether a duty exists is ultimately a question of fairness.. . . [Goldberg v. Housing Authority of City of Newark, 38 N.J. 578, 583, 186 A.2d 291, 293 (1962) (Emphasis in original).]
Appellant relies heavily on Kline v. 1500 Massachusetts Avenue Apartment Corp., 141 U.S.App.D.C. 370, 439 F.2d 477 (1970), where the victim of an attack was allowed to recover against an apartment corporation which had removed certain safety devices installed in its corridors subsequent to the time the victim  a lessee  had moved into the building. But that case turned on principles of breach of implied contract and the special relationship of landlord and tenant. Plainly it has little, if any, bearing on the case before us.
Affirmed.
NOTES
[1] D.C.Code 1973, § 49-301.