**BOARD OF TRUSTEES OF the UNIVERSITY OF the DISTRICT OF COLUMBIA, Appellant,**

v.

**Graciette DiSALVO, et al., Appellees.**

**No. 06–CV–1481.**

District of Columbia Court of Appeals.

Argued Oct. 29, 2008.

Decided July 2, 2009.

---

Holly M. Johnson, Assistant Attorney General, with whom Peter J. Nickles, Interim Attorney General for the District of Columbia at the time the brief was filed, and Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, were on the brief for appellant.

Kenneth M. Berman, with whom Lauren B. Pisano, Gaithersburg, MD and H. David Leibensperger, Peter T. Enslein, Bethesda, MD and Patrick S. Guilfoyle, were on the brief for appellees.

Before WASHINGTON, Chief Judge, and NEWMAN and FARRELL, Senior Judges.

WASHINGTON, Chief Judge:

On January 14, 2002, at about 3:30 in the afternoon, Graciette DiSalvo ("DiSalvo"), a scholarship student at the University of the District of Columbia ("UDC"), was attacked by two unidentified, armed assailants in parking garage 52 on the UDC campus. The assailants demanded money and one of the assailants stabbed DiSalvo through her cheek with a knife, fracturing her tooth. During the attack, a man opened a nearby door to enter the garage, but retreated immediately. DiSalvo used this interruption to break free from her assailants and escape. The assailants were not apprehended or identified.

DiSalvo and her husband, Michael DiSalvo, brought the instant negligence action against UDC seeking monetary damages for their injuries stemming from the armed attack in the parking garage. The DiSalvos claimed that UDC was liable for failing to take adequate safety precautions to prevent the attack. Before trial, UDC moved for judgment as a matter of law, and the trial court denied the motion. On August 24, 2006, the jury found in favor of the DiSalvos and awarded $300,000 to DiSalvo and $100,000 to her husband. At the conclusion of trial, UDC renewed its motion for judgment as a matter of law, and the trial court reserved ruling on the motion until after the jury reached its verdict. In support of its motion for judgment as a matter of law, UDC argued that the DiSalvos failed to put forth the quantum of proof necessary for a reasonable jury to have found UDC liable for the attack on DiSalvo in the parking garage. *See* Super. Ct. Civ. R. 50(a)(1). On November 3, 2006, the trial judge concluded that the DiSalvos had set forth sufficient evidence upon which a reasonable jury could find that UDC had heightened foreseeability with regard to the attack on DiSalvo and denied UDC's renewed motion for judg-

ment as a matter of law. UDC now appeals the denial of its motion.

We review the denial of a motion for judgment as a matter of law *de novo* and apply the same standard as the trial court. *See Youssef v. 3636 Corp.*, 777 A.2d 787, 792 (D.C.2001). "When the evidence and its attendant inferences, viewed in the light most favorable to the non-moving party, support but one reasonable conclusion favorable to the moving party, the court must grant the motion; otherwise, however, the motion must be denied." *Id.* "[I]f it is clear that the plaintiff has not established a prima facie case," we must grant judgment as a matter of law for the defendant. *See Clement v. Peoples Drug Store, Inc.*, 634 A.2d 425, 427 (D.C.1993). Accordingly, the question before us is whether the DiSalvos presented sufficient evidence to permit the jury to return a verdict in their favor. UDC argues that the trial court erred in denying its motion for judgment as a matter of law because the DiSalvos failed to establish, as a matter of law, that the violent attack on DiSalvo in UDC's parking garage was sufficiently foreseeable to hold UDC liable for the attack. We agree.

I.

▮ It is axiomatic in torts that one can only be held liable for negligence if there was a duty, breach of that duty, and injury proximately caused by the breach. Under District of Columbia law, in order to hold a defendant liable for injury resulting from intervening criminal acts, "this court has repeatedly held that liability depends upon a more heightened showing of foreseeability than would be required if the act were merely negligent." *Potts v. District of Columbia*, 697 A.2d 1249, 1252 (D.C.1997) (citations omitted); *see also Lacy v. District of Columbia*, 424 A.2d 317, 323 (D.C.1980) ("[B]ecause of the ex-

traordinary nature of criminal conduct, the law requires that the foreseeability of the risk be more precisely shown."). Specifically, heightened foreseeability factors directly into the duty analysis because a defendant is only liable for the intervening criminal acts of another "if the criminal act is so foreseeable that a duty arises to guard against it." *See McKethean v. Washington Metro. Area Transit Auth.*, 588 A.2d 708, 717 (D.C.1991). "In this context, then, the requisite duty of care required for negligence is a function of foreseeability, arising only when foreseeability is alleged commensurate with 'the extraordinary nature of [intervening] criminal conduct.'" *District of Columbia v. Beretta, U.S.A. Corp.*, 872 A.2d 633, 641 (D.C.2005) (en banc).

■■■ The heightened foreseeability standard in District of Columbia law is premised on the assumption that the court must limit the extent to which defendants become the insurers of others' safety from criminal acts. As we noted in *Cook v. Safeway Stores, Inc.*, "[e]veryone can fore-

see the commission of crime virtually anywhere and at anytime. If [ordinary] foreseeability itself gave rise to a duty to provide 'police' protection for others, every residential curtilage, every shop, every store, every manufacturing plant would have to be patrolled by the private arms of the owner . . . Of course, none of this is at all palatable." 354 A.2d 507, 509 (D.C. 1976) (citations omitted). This logic has pervaded this court's decisions dealing with a defendant's liability to a plaintiff for injury resulting from intervening criminal acts. *See McKethean, supra*, 588 A.2d at 717 (holding that a defendant has a duty of protection for intervening criminal acts only if the criminal act was sufficiently foreseeable). Such incorporation of foreseeability directly into the duty analysis "might offend a doctrinaire."[1] *Workman v. United Methodist Comm.*, 355 U.S.App. D.C. 131, 137, 320 F.3d 259 (D.C.Cir.2003). However, under District of Columbia law, a determination of whether a duty exists is the result of a variety of considerations and not solely the relationship between the parties.[2] Specifically, consideration of

---

1. There is general support for the practice of confining foreseeability questions to the proximate cause analysis and basing the duty analysis solely on the relationship between the parties. *See* W. KEETON, PROSSER & KEETON ON TORTS § 53, at 356 (5th ed. 1984) ("It is better to reserve 'duty' for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation."), and at § 37, at 236 (noting that whether a duty exists concerns "whether upon the facts in evidence, such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other"); *see also Workman, supra*, 320 F.3d 259, 355 U.S.App. D.C. at 137 ("Ordinarily, the relationship between the parties is the key to determining whether the defendant had a legally enforceable duty to the plaintiff (or her decedent), whereas foreseeability is important to issues of proximate causation and conform-

ity to the standard of care, issues that arise only after a duty has been found.").

2. Further, "[w]oven into this overall consideration [of duty] is also the question of reasonable foreseeable risk to be perceived by the actor at the time of the incident." *Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1098 (D.C.1994). The existence of a duty is also shaped by considerations of fairness and "results ultimately from policy decisions made by the courts and the legislatures." *Williams v. Baker*, 572 A.2d 1062, 1064 (D.C. 1990) (en banc); *see also District of Columbia v. Doe*, 524 A.2d 30, 33 (D.C.1987) (quoting *Cook, supra*, 354 A.2d at 509–10) ("Whether a *duty* exists is ultimately a question of *fairness.*" (emphasis in original)); W. KEETON, PROSSER AND KEETON ON TORTS, § 53, at 358 (5th ed. 1984) (" '[D]uty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.").

whether a duty exists to protect another from intervening criminal acts includes consideration of heightened foreseeability, and this court has not reconsidered that framework. *See Beretta,* 872 A.2d at 642 n. 4 ("D.C. courts have repeatedly spoken of the heightened foreseeability requirement in terms of duty. We see no need to reconsider that framework of analysis in this case." (internal citation omitted)). As a division of this court, we must apply the law of the District of Columbia as it stands and our precedent is clear that the relationship between the defendant and plaintiff is not alone sufficient to establish a duty of protection for injuries resulting from intervening criminal acts of a third-party; in addition, there must be some evidence that the defendant was, or should have been, on prior notice that the intervening criminal act was reasonably likely to occur.

Here, it is undisputed that DiSalvo was injured due to the intervening criminal acts of a third party. The parties disagree, however, as to whether DiSalvo's relationship to UDC was one that entailed a greater duty of protection, and therefore requires a less heightened showing for foreseeability. The DiSalvos fairly assert that the relationship between the defendant and plaintiff and the defendant's liability to the plaintiff can be viewed on a "sliding scale," whereby a relationship entailing a greater duty of protection may require a lesser showing of foreseeability in order for liability to attach. *See Workman, supra,* 355 U.S.App. D.C. at 135–36, 320 F.3d 259 ("[District of Columbia] cases suggest a sliding scale: If the relationship between the parties strongly suggests a duty of protection, then specific evidence of foreseeability is less important, whereas if the relationship is not of a type that

entails a duty of protection, then the evidentiary hurdle is higher."). However, DiSalvo asserts no authority to support her contention that her relationship with UDC was of the type that entailed a heightened duty of protection. Neither do we know of any authority finding that a university owes a greater duty of protection to its adult, commuter students against the criminal acts of outsiders than it owes to the general public.[3] However, even if the relationship here did entail a greater duty of protection, we find that to hold UDC liable for the DiSalvos' injuries would still require a heightened showing of foreseeability greater than the DiSalvos' showing here.

 As we held in *Doe, supra,* 524 A.2d at 33, heightened foreseeability "does not require previous occurrences of the particular type of harm, but can be met instead by a combination of factors which give defendants an increased awareness of the danger of a particular criminal act." The crux of heightened foreseeability is a showing of the defendant's "increased awareness of the danger of a particular criminal act." *Id.* In order for a defendant to be liable to a plaintiff for injury caused by an intervening criminal act, the plaintiff is "obligated to present evidence establishing that the [crime] was so foreseeable that it became [the defendant's] duty to guard against it[.]" *Clement v. Peoples Drug Store, Inc.,* 634 A.2d 425, 427 (D.C.1993). In this case, the DiSalvos had to establish that UDC had an increased awareness of the risk of a violent, armed assault in the parking garage. It is not sufficient to establish a general possibility that the crime would occur, because, as we have said before, the mere possibility of crime is easily envisioned and heightened

---

**3.** We are not concerned here with issues arising in contexts such as "date rape" involving fellow students.

foreseeability requires more precision. This is particularly true considering that after the crime occurs the event seems more likely in retrospect. Accordingly, we must concern ourselves with what, based on the DiSalvos' evidence, UDC should have precisely foreseen before the attack occurred.

The DiSalvos adduced the following facts to establish that there was heightened foreseeability of the attack on DiSalvo in UDC's parking garage. The facts are disputed only as to their significance. Parking garage 52 is below-ground, open to the public, and patrolled by a roving security officer. The DiSalvos alleged that the security in the garage was inadequate, specifically noting that the parking garage lacked video or audio surveillance and did not have a parking attendant. The DiSalvos point to a UDC chief security officer's testimony that he had requested a parking attendant in parking garage 52. The DiSalvos also point to several previous on-campus crimes. Two were crimes of unlawful entry, one where a person unlawfully entered a campus building, was repeatedly asked to leave by a campus police officer, and then pushed the officer in the chest. Three others were crimes of theft accompanied by assault; one, where a woman was approached by an acquaintance who, after an exchange, struck her in the face and stole her cell phone; the second, where a man was pushed and pickpocketed while exiting the UDC metro station; and the third, where a woman was pushed to the ground and robbed outside of a classroom building.

Of the crimes detailed by the DiSalvos, none was committed with a weapon, none was in a campus parking garage, and none resulted in any serious injury to the victim. Further, the one crime showing some similarity, where the woman was pushed to the ground and robbed, occurred above-ground on a sidewalk outside of a school

building on the opposite end of campus from parking garage 52 (about two blocks away). Further, the DiSalvos proffered no evidence that UDC had received any complaints about the security of parking garage 52 prior to the attack on DiSalvo, and in his testimony the UDC security officer specifically indicated that the request for a parking attendant was routine and proactive, and made along with a litany of other requests for more resources, not in response to any specific security concerns. The evidence fails to demonstrate why UDC would have had an increased awareness that the attack on DiSalvo was more likely to occur than any other crime on campus, and we have "rejected liability as a matter of law where foreseeability (hence duty) was not limited by any evidentiary reference to a precise location or class of persons." *Beretta, supra,* 872 A.2d at 642. The evidence adduced by the DiSalvos seemingly could be used to support the foreseeability of any crime that had occurred on UDC's campus, as there is no "specific evidence bearing directly on the foreseeability of the [attack] at issue here." *Potts, supra,* 697 A.2d at 1252. In instances where we have found that a plaintiff has sufficiently established heightened foreseeability, we have required a significantly greater foreseeability showing than was made in this case.

Consideration of the few cases where we have held that a defendant had a duty to protect the plaintiff from a criminal act shows that where sufficient foreseeability was found, the facts in evidence established that the defendant had reason to anticipate the type of particular criminal attack that actually occurred. In *Kline v. 1500 Massachusetts Ave. Apartment Corp.,* where the plaintiff was assaulted and robbed in the common hallway of her apartment building just two months after another tenant was similarly attacked in the same hallway, the court found height-

ened foreseeability because "the crimes of violence, robbery, and assault [ ] had been occurring with mounting frequency on the premises" and the landlord had been asked to secure the building in light of the crime. 141 U.S.App.D.C. 370, 373, 439 F.2d 477 (D.C.Cir.1970). The court concluded that in light of the facts in *Kline*, "[t]he risk of criminal assault and robbery on a tenant in the common hallways of the building was thus entirely predictable." *Id.*

We also found that the defendant had a duty of protection in *Doe, supra*, 524 A.2d at 34, where a young student was abducted from inside of her elementary school classroom and raped by an unknown intruder. In *Doe*, we held that "crimes against persons in and around the school—an arson in the school and a robbery on the school's playground; sexual assaults and other violent activity in the surrounding area; and deficient school security—the open rear gate, broken doors, malfunctioning intercom, and presence of adult males who freely roamed throughout the school" supported a finding that the particular criminal act was reasonably foreseeable.[4] *Id.*; *see also Doe v. Dominion Bank, N.A.*, 295 U.S.App.D.C. 385, 388–89, 963 F.2d 1552 (D.C.Cir.1992) (finding a duty where a woman was raped on an unsecured vacant floor of a building where other criminal activity had occurred and tenants had specifically warned the landlord about the potential danger posed by the lack of security, vacant floors, and unauthorized persons in the building); *Novak v. Capital Mgmt. & Dev. Corp.*, 371 U.S.App.D.C. 526, 528, 452 F.3d 902 (D.C.Cir.2006) (finding a duty where plaintiffs were attacked by a group of men immediately outside of a club's alley entrance, the entrance lacked any

security measures, and the club owner had increased awareness due to prior fights in and around the club, including repeated fights at the alley entrance). In these cases, the common thread is that the facts demonstrating heightened foreseeability showed, if not awareness of the precise risk, close similarity in nature or temporal and spatial proximity to the crime at issue.

In cases where we have found that the defendant had no duty to protect the plaintiff from the criminal act because the risk was not sufficiently foreseeable, we have focused on the defendant's lack of increased awareness and emphasized the distinction between the possibility of a criminal act and a more precisely foreseen risk. Most recently, in *Bruno v. Western Union Financial Servs. Inc.*, No. 06–CV–64, 973 A.2d 713, 721–22, 2009 D.C.App. Lexis 232, *21–22 (D.C. June 18, 2009), where a customer was assaulted and robbed while transacting business at a walk-up Western Union service center, we found that the crime was committed by a loiterer and that there was no history of prior crimes or the presence of loiterers that would have given the defendant an increased awareness of the potential for an attack akin to the particular one that occurred. In *Ellis v. Safeway Stores, Inc.*, 410 A.2d 1381, 1382 (D.C.1979), where a customer attacked another customer with an ice pick in a check-out line, we held that the store owed no duty to insure the safety of the customer from an unforeseeable criminal attack. We found that the attack was unforeseeable because there was "no way [the store] could know in advance of the particular attack in question" and "[s]pecific isolated criminal assaults such

---

4. In addition to the evidence of criminal activity and lapsed security in *Doe*, the victim was also entitled to a heightened duty of protection because she was a young child in public school over which the District of Columbia exercised custodial care, who was

"particularly vulnerable to the conduct that befell her," and was "taken from a place that we would expect to be a safe haven." *Bailey v. District of Columbia*, 668 A.2d 817, 821 (D.C.1995).

as the attack [here] have been deemed unforeseeable." *Id.* at 1382–83.

Similarly, in *Clement v. Peoples Drug Store, Inc.*, 634 A.2d 425 (D.C.1993), where a gunman killed an employee leaving his place of employment, the court held that although there was criminal activity in and around the drug store the facts did not create a heightened awareness of the risk of a particular criminal act. We noted that of the six offenses that had previously occurred in the drug store "none involved weapons or any significant physical harm to the victims ... and none of the offenses occurred at the closing time of [the store]." Further, in *Bailey, supra,* 668 A.2d at 817, where a spectator was struck by a ricocheting bullet at a school cheerleading competition, we found that the school had no duty because there was "no evidence of any shooting incidents, assaults, or other gun-related violence at any Department cheerleading competition or any other Department event held at Evans Junior High School." *Id.* at 820. The criminal acts in *Ellis, Clement,* and *Bailey* were not sufficiently foreseeable to give rise to a duty. Certainly, it was possible to foresee their occurrence, but that is not enough under our cases, which require a reasonable probability—and thereby constructive notice—that the intervening act will occur. Likewise, the attack on DiSalvo was not foreseeable, as a matter of law, under the test of our decisions.

In conclusion, we do not agree with the DiSalvos' arguments that our previous precedent provides a basis for concluding that the intervening criminal attack on DiSalvo was sufficiently foreseeable as to hold UDC liable for the attack. On the facts of this case, there is no reason why UDC would have been aware of an increased risk of violent criminal activity in parking garage 52 prior to the attack on DiSalvo. The facts simply do not establish that UDC had reason to foresee the attack on DiSalvo any more precisely than any other possible criminal act on campus. Without more, the mere possibility of a criminal act occurring is not sufficient to impose a duty of protection on UDC. We echo the sentiment that "although one cannot help but feel sympathy for appellant, our controlling legal precedents do not warrant requiring appellees to answer in damages for her unfortunate injuries." *See Bruno, supra,* 973 A.2d at 721–22, 2009 D.C.App. Lexis 232 at *22.

Accordingly, because the DiSalvos did not put forth sufficient evidence to establish that UDC should have precisely foreseen a violent, armed attack in the parking garage, UDC cannot be held liable for the attack on DiSalvo, and the trial court erred by denying UDC's motion for judgment as a matter of law. Further, because we find that UDC did not have a duty to protect DiSalvo from the armed attack in the parking garage, we do not reach UDC's second issue that the DiSalvos' expert failed to articulate a national standard of care.

Reversed and remanded for entry of judgment as a matter of law in favor of appellant.

*So ordered.*

NEWMAN, Senior Judge, dissenting:

An experienced District of Columbia trial judge, fully familiar with the controlling cases on the issue relevant in this appeal, beginning with our decision in *Ramsay v. Morrissette*, 252 A.2d 509 (D.C.1969), and continuing with such cases as *Kline v. 1500 Massachusetts Ave. Apartment Corp.*, 141 U.S.App.D.C. 370, 439 F.2d 477 (D.C.Cir. 1970); *District of Columbia v. Doe,* 524 A.2d 30 (D.C.1987); *Potts v. District of Columbia,* 697 A.2d 1249 (D.C.1997); and *District of Columbia v. Beretta, U.S.A. Corp.,* 872 A.2d 633 (D.C.2005) (en banc), as well as other cases cited in the majority

opinion, determined that the DiSalvos had presented a sufficient quantum of evidence from which a reasonable juror, acting reasonably, could conclude that the University of the District of Columbia had breached the duty owed to the DiSalvos under these cases. The trial judge instructed the jury on this issue, instructions to which no relevant objections were made. Based on the evidence and these instructions on the law, twelve residents of the District of Columbia, serving as jurors, unanimously found that the University of the District of Columbia had breached its duty to the DiSalvos, as defined by our jurisprudence. Now, two judges of this court hold, as a matter of law, that the experienced trial judge and all twelve jurors acted unreasonably. Because I find myself in agreement with the "unreasonable thirteen," rather than the "reasonable two," I dissent.