**Harold T. FREAS, Sr., Appellant,**

v.

**ARCHER SERVICES, INC., Appellee.**

**No. 95–CV–51.**

District of Columbia Court of Appeals.

Argued April 17, 1998.

Decided Sept. 3, 1998.

Alan Banov, Washington, DC, for appellant.

Martin F. McMahon, New York City, for appellee.

Woodley B. Osborne, Washington, DC, and Daniel S. Koch filed an amicus curiae brief on behalf of Metropolitan Washington Employment Lawyers Association.

Before TERRY, FARRELL and REID, Associate Judges.

REID, Associate Judge:

This case, involving the dismissal of a wrongful discharge action under Super.Ct.Civ.R. 12(b)(6) (1998), is before us for the second time. In *Freas v. Archer Services, Inc.,* 669 A.2d 144 (D.C.1996) (*Freas I*), we dismissed the case on jurisdictional grounds because the trial court had retained jurisdiction over count two of the amended complaint, and no certification had been made under Super.Ct.Civ.R. 54(b) as to count one. Subsequently, upon joint motion of the parties, on February 14, 1996, the trial court dismissed count two with prejudice on jurisdictional grounds, and entered a final judgment dismissing count one pursuant to Rule 54(b).[1] Upon appellant's motion, this court

---

**1.** Super.Ct.Civ.R. 54(b) provides in pertinent part:

reinstated his appeal, but held it in abeyance pending the disposition of the appeal in another case involving a wrongful discharge cause of action, *Carl v. Children's Hosp.*, 702 A.2d 159 (D.C.1997) (en banc). We conclude that Mr. Freas made a sufficient showing to withstand a motion to dismiss his amended complaint under Super.Ct.Civ.R. 12(b)(6). Because count one of his lawsuit is based on statutorily banned retaliation for his complaints and legal action concerning his employer's alleged violation of a statute, which prohibits deductions from an employee's paycheck for workers' compensation insurance premiums, the trial court erred in dismissing the count. Thus, we reverse the trial court's judgment and remand the case with instructions to reinstate count one.

## FACTUAL SUMMARY

In reviewing a dismissal under Rule 12(b)(6), "we must construe appellant['s] complaint in the light most favorable to [his] claim and must accept [his] allegations as true." *Cauman v. George Washington Univ.*, 630 A.2d 1104, 1105 (D.C.1993). The complaint and other pleadings filed by Mr. Freas in this action alleged, *inter alia*, the following facts. Mr. Freas commenced employment as a courier for Archer Courier Systems, Inc. ("ACSI") in November 1982. On November 12, 1982, Mr. Freas discovered that ACSI made a deduction from his paycheck to cover cargo insurance and workers' compensation insurance payments. Mr. Freas complained about the cargo insurance and workers' compensation insurance deductions a number of times to the manager of ACSI's Air Department in New York. During one meeting, the manager allegedly told Mr. Freas: "You're wasting your time! We'll break you before it ever gets that far! If you file suit against us, I will personally guarantee it will cost you your job."

When more than 1 claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or 3rd party claim ..., the Court may direct the entry of a final judgment as to 1 or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

The problem concerning the deductions continued into 1983 and 1984, and on August 3, 1984, a class action suit was filed against ACSI alleging, *inter alia*, ACSI's violation of District wage payment and wage compensation laws due to the deduction of costs to cover cargo and workers' compensation insurance payments. Mr. Freas was one of the lead plaintiffs in the case. On January 10, 1985, Mr. Freas suffered a back injury while working. He provided deposition testimony in the class action suit on March 20, 1985. He was terminated on April 29, 1985, while he was still receiving workers' compensation benefits due to his injury. His termination notice stated that "because of [his] inability to provide services to [the employer] in recent months it has been necessary to engage an additional contractor." Mr. Freas alleged that he was not replaced on the shift to which he was assigned. In early December 1985, Mr. Freas's attorney informed ACSI that he was well enough to resume work, and inquired whether he could return on a temporary basis. Five days later ACSI hired someone else, and stated that there was no position for him. However, the new employee was assigned to the evening shift, not the day shift which Mr. Freas had worked. The class action was settled on November 13, 1987, when ACSI agreed to pay a total of $225,000 to the class members. The court approved the settlement on May 10, 1988.

On April 21, 1988, Mr. Freas filed a lawsuit against ACSI and others [2] claiming wrongful discharge due to (1) his involvement in the class action suit, and (2) his filing of a worker's compensation claim for his back injury. Count one of Mr. Freas's amended complaint, the only count now before us, alleged that ACSI terminated him "at least in part out of retaliation for filing, prosecuting, and actively participating in the class-action suit against them." He further alleged that: "Federal and District of Columbia statutes reflect a clear mandate of public policy to

The trial court ordered count one to be dismissed, finding "that there is no just reason to delay the entry of final judgment in this case on Count 1 under Civil Rule 54(b)...."

2. The other parties sued by Mr. Freas are no longer part of this case.

protect employees in the District of Columbia generally for filing lawsuits against their employers." In addition, Mr. Freas averred that "[ACSI] violated public policy and committed an actionable tort when [it] terminated [his] employment"; and that, "as a result ..., he has suffered damages...." Supporting count one were allegations, set forth above, indicating that ACSI made deductions from Mr. Freas's paycheck for cargo insurance and workers' compensation insurance, in alleged violation of "the District of Columbia Worker's [sic] Compensation Act, D.C.Code 1981 §§ 36–101 *et seq.*"

### ANALYSIS

Mr. Freas contends that count one of his amended complaint should not have been dismissed because it stated a cause of action for wrongful discharge, since he was fired in reprisal for filing a class action complaint against his employer who allegedly violated District of Columbia law. Among other statutes, he points to D.C.Code §§ 36–220.9(3) (formerly § 36–213), –220.10, –220.11, and – 316.[3] ACSI argues that count one of Mr. Freas's amended complaint was fatally defective because he did not plead a specific statutory provision until filing a later motion to reconsider the dismissal on September 9, 1988. In addition, ACSI maintains that Mr. Freas's case does not fall within the parameters of our decision in *Adams v. George W. Cochran & Co.,* 597 A.2d 28 (D.C.1991), and *Carl v. Children's Hosp., supra.* The Metropolitan Washington Employment Lawyers Association filed an *amicus curiae* brief contending that Mr. Freas's complaint "states a cause of action for the tort of wrongful discharge in violation of the public policy of the District of Columbia" because "the D.C. Workers['] Compensation Act expressly makes criminal an employer's deduction from salary for the purpose of covering the costs of workers['] compensation benefits or insur-

ance." To allow dismissal of Mr. Freas's complaint to stand, the Association argues, "would undermine this express statutory policy."

### The Holdings in Adams and Carl

In *Adams, supra,* we recognized an intentional tort action for wrongful discharge, holding "that there is a very narrow exception to the at-will doctrine under which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." 597 A.2d at 34. We concluded that, according to the jury's verdict in that case, the appellant "was forced to choose between violating [a] regulation [operation of a motor vehicle without a current inspection sticker][4] and keeping his job—the very choice which ... he should not have been required to make." In *Carl, supra,* "We h[e]ld that the very 'narrow exception' created in *Adams* should not be read in a manner that makes it impossible to recognize any additional public policy exceptions to the at-will doctrine that may warrant recognition." 702 A.2d at 160. In addition, a majority of the court also said:

> Future requests to recognize [public policy] exceptions ... should be addressed only on a case-by-case basis. The court should consider seriously only those arguments that reflect a clear mandate of public policy—*i.e.,* those that make a clear showing, based on some identifiable policy that has been "officially declared" in a statute or municipal regulation, or in the Constitution, that a new exception is needed.[5]

*Id.* at 164.

### Count One of Mr. Freas's Amended Complaint

Count one of Mr. Freas's amended complaint alleges wrongful discharge because he

---

**3.** He also cites D.C.Code § 36–342 concerning retaliation against employees who file workers' compensation claims; and 42 U.S.C. § 1985(2) prohibiting conspiracies to obstruct justice. Because we dispose of this matter on the basis of other statutory provisions, we do not address Mr. Freas's arguments regarding these statutes.

**4.** *Adams, supra,* 597 A.2d at 30.

**5.** The majority of the court also stated that "there must be a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination." *Carl, supra,* 702 A.2d at 164.

filed and prosecuted a class action against ACSI for deductions from the pay of couriers to cover cargo insurance and workers' compensation insurance. D.C.Code § 36–220.9 makes it "unlawful for any employer to: (3) Discharge or in any other manner discriminate against any employee because that employee has filed a complaint or instituted or caused to be instituted any proceeding under or related to this subchapter or has testified or is about to testify in any proceeding[.]" Under § 36–220.10(a), "[a]ny person who willfully violates any of the provisions of § 36–220.9 shall, upon conviction, be subject to a fine of not more than $10,000, or to imprisonment of not more than 6 months, or both." In addition, under § 36–220.11(a), "[a]ny employer who pays an employee less than the wage to which that employee is entitled ... shall be liable to that employee...." Under § 36–220.11(b) an employee may sue the employer for damages. D.C.Code § 36–316(a) provides that:

No agreement by an employee to pay any portion of premium paid by his employer to a carrier or to contribute to a benefit fund or department maintained by such employer for the purpose of providing compensation or medical services and supplies as required by this chapter shall be valid, and any employer who makes a deduction for such purpose or any employee entitled to the benefits of this chapter shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not more than $1,000.

The class action suit, in which Mr. Freas participated and testified as a lead plaintiff, challenged the unlawful deductions from class members' paychecks to cover workers' compensation insurance premiums, in violation of D.C.Code § 36–316(a). The class action suit was related to the minimum wage provisions of subchapter one of title thirty-six of the D.C.Code, according to the suit, since the paychecks of ACSI couriers were decreased by the amount of the insurance premiums. Moreover, Mr. Freas alleged that when he complained about the deductions, the manager of ACSI's Air Department in New York told him: "You're wasting your time! We'll break you before it ever gets that far! If you file suit against us, I will personally guarantee it will cost you your job." Mr. Freas testified in the class action suit on March 20, 1985, and was terminated on April 29, 1985, even though he had been receiving workers' compensation benefits since January 1985 when he suffered an injury while at work. He alleged that he was not replaced on his shift after his firing, but that when he sought to return to work in December 1985 when he was well, he was informed there was no position available for him. Five days after this information was conveyed to him, a new employee was hired, but was not assigned to Mr. Freas's shift.

D.C.Code § 36–220.9(3) contains an explicit prohibition on terminating an employee who files a complaint "under or *related to* [the] subchapter" concerning minimum wages (emphasis added). The minimum wages subchapter embodies an express mandate that employees in the District "should be paid at wages sufficient to provide adequate maintenance and to protect health." D.C.Code § 36–220.[6] Logically related to § 36–220 is the mandate set forth in § 36–316, that deductions from an employee's paycheck to cover workers' compensation insurance premiums are prohibited and punished by a fine up to $1,000. The District's legislature has determined that employers who discharge an employee who files a lawsuit related to minimum wage policies are to be

---

**6.** D.C.Code § 36–220 provides in full:
(a) The Council of the District of Columbia finds that persons employed in the District of Columbia should be paid at wages sufficient to provide adequate maintenance and to protect health. Any wage that is not sufficient to provide adequate maintenance and to protect health impairs the health, efficiency, and well-being of persons so employed, constitutes unfair competition against other employers and their employees, threatens the stability of industry, reduces the purchasing power of employees, and requires, in many instances, that their wages be supplemented by the payment of public moneys for relief or other public and private assistance. Employment of persons at these insufficient rates of pay threatens the health and well-being of the people of the District of Columbia and injures the overall economy.
(b) It is the declared policy of this subchapter to ensure the elimination of the conditions referred to above.

punished under the criminal law (§ 36–220.10), and may be sued civilly (§ 36–220.11). Here, Mr. Freas has alleged facts which, if proven, demonstrate that he was discharged in violation of a mandate explicitly set forth in District law, because he filed and prosecuted a class action suit alleging unlawful workers' compensation insurance premium deductions from the pay of couriers employed by ACSI.

ACSI's argument, that Mr. Freas's amended complaint is fatally defective because he did not plead a specific statutory provision until his September 9, 1998 motion to reconsider, is not persuasive. In his amended complaint, Mr. Freas alleged that the deductions from his paycheck for workers' compensation insurance premiums violated "the District of Columbia Worker's [sic] Compensation Act, D.C.Code 1981[sic] § [§ ] 36–101 et seq." This court has said previously that: "Under Super.Ct.Civ.R. 8(a) and (e), a complaint is sufficient so long as it fairly puts the defendant on notice of the claim against him." *Scott v. District of Columbia*, 493 A.2d 319, 323 (D.C.1985) (citation omitted). By citing to D.C.Code §§ 36–101 et seq., and specifying the unlawful deductions from his paycheck, Mr. Freas's amended complaint informed ACSI of the nature of his civil action. Moreover, ACSI clearly was on notice of the claim against it, and had the opportunity to litigate the issue raised by § 36–220.9(3) at the hearing on ACSI's motion to dismiss. *See Moore v. Moore*, 391 A.2d 762 (D.C.1978) ("parties have impliedly contested a matter … [where] the party contesting the [matter] received actual notice of the injection of the unpleaded matters, as well as an adequate opportunity to litigate such matters and to cure any surprise from their introduction"). 391 A.2d at 768 (citations omitted). Significantly also, from August 1984 to May 1988, ACSI defended the class action suit which Mr. Freas filed and prosecuted, and thus, was aware of Mr. Freas's legal theories regarding workers' compensation insurance premium deductions from the paychecks of couriers.

*Adams and Carl*

This case is not controlled by *Adams, supra;* it is based on a different theory. In *Thigpen v. Greenpeace, Inc.*, 657 A.2d 770 (D.C.1995), the *amicus curiae*, Metropolitan Washington Employment Lawyers Association, broached the theory that is presented here by Mr. Freas. In discussing the Association's argument, we said in a footnote:

> Amicus curiae Metropolitan [Washington] Employment Lawyers Association in its brief suggests that an employee in a situation such as [appellant] might bottom a cause of action upon D.C.Code § 36[–]220.9 (1993) dealing with retaliatory discharge for minimum wage law complaints. This is a totally different theory from that presented by [appellant] in his complaint. It rests not upon the *Adams* concept of refusal to violate a statute or regulation, but rather upon statutorily banned retaliation for the making of complaints about law violations.

*Id.* at 772 n. 5. Mr. Freas's case is based not on his own refusal to violate a statute, but on the statutory mandate in § 36–220.9(3) prohibiting retaliatory discharge of an employee who sues an employer for allegedly violating a law relating to payment of minimum wages.

On the other hand, Mr. Freas's case differs from *Carl, supra*, because the discharge of Ms. Carl, the appellant, was not expressly prohibited by D.C.Code § 1–224, the statute at issue in that case, or any related statute. Rather, we had to determine "whether the alleged firing because Ms. Carl testified before the Council [of the District of Columbia] is sufficiently within the scope of the policy embodied in the statute so that a court may consider imposing liability on Children's Hospital for Ms. Carl's termination for otherwise permissible reasons." *Carl, supra*, 702 A.2d at 165. Here, there is no need to apply the *Carl* rationale because the legislative policy in § 36–220.9 is explicit and may apply directly to ACSI's alleged discharge of Mr. Freas for filing and prosecuting a class action suit concerning workers' compensation insurance premium deductions relating to minimum wages. The District's legislature provided two remedies for an employer's unlawful action under § 36–220.9(3)—a criminal penalty (§ 36–220.10), and a private right of action (§ 36–220.11). Mr. Freas's suit stems

from the private right of action in § 36–220.11.

In short, because count one of Mr. Freas's action is based on statutorily banned retaliation for his complaints and legal action concerning his employer's alleged violation of a statute, which prohibits deductions from an employee's paycheck for workers' compensation insurance premiums, the trial court erred in dismissing the count.

Accordingly, for the foregoing reasons, we reverse the judgment of the trial court and remand this case with instructions to reinstate count one of appellant's amended complaint.

*Reversed and remanded.*