Carolyn M. **CARTER**, Appellant,

v.

**DISTRICT OF COLUMBIA**, Appellee.

No. 07–CV–987.

District of Columbia Court of Appeals.

Argued April 1, 2009.

Decided Sept. 24, 2009.

David A. Branch for appellant.

David A. Hyden, Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellee.

Before REID, GLICKMAN, and OBERLY, Associate Judges.

GLICKMAN, Associate Judge:

In late 2001, Carolyn Carter was fired from her position as a supervisor in the District of Columbia Department of Human Services (DHS). By summer 2002, she filed a discrimination complaint with the D.C. Office of Human Rights. That complaint still was pending when she filed this civil suit in Superior Court against the District in June 2004. In a series of three orders, two judges of the Superior Court granted summary judgment to the District on each of Carter's claims. Carter asks us to reverse each ruling. We hold, however, that Carter's Human Rights Act claims were barred by either the statute of limitations or her election of an administrative remedy; that her severance pay claim is without merit because she chose to receive a retirement annuity instead; and that her

common law wrongful discharge claim is similarly without merit because her case does not fall within an exception to the at-will employment doctrine. Carter also complains on appeal that the trial court entered final judgment for the District without allowing her to amend her complaint to assert new causes of action on the day set for trial. We hold that Carter forfeited her objection to that ruling. Accordingly, we affirm.

## I. Factual Background[1]

Carter began working for DHS in 1969. By 2000, she had advanced to the position of Supervisory Social Service Representative in the DHS Income Maintenance Administration (IMA). In that position, Carter supervised two unit chiefs who oversaw the processing by individual social workers of applications for public assistance. In August 2000, Carter was informed by letter that her position, formerly part of the Career Service,[2] would be converted to one in the Management Supervisory Service (MSS).[3] The letter explained that if she accepted the position, which entailed higher pay and greater responsibility, Carter would lose the rights afforded to her as a Career Service employee and would become an at-will employee. Carter accepted the position.

In approximately January 2001, Carter was passed over for a promotion to a Center Manager position and a concomitant pay increase. After failing to receive what she considered to be a satisfactory explanation for that decision, Carter sent a letter of complaint to IMA Director Carolyn Colvin in June 2001. The letter, prepared for Carter by an "employee representative," charged that "unlawful selection method[s]" had been used to fill the Center Manager positions[4] and that Carter's "employment rights" had been violated. The letter also asserted that Carter's supervisor, Berhan Kahsay–Jones, was "harass[ing]" her and creating a "hostile work environment."

Kahsay–Jones had become Carter's supervisor in approximately April 2001, and it appears their relationship was a rocky one from the start. As Carter later stated in her deposition, Kahsay–Jones made snide comments to her about "you people," which Carter took to be "a slur word for [American] blacks." (According to Carter, Kahsay–Jones "is Ethiopian.") On one occasion, Carter reported, Kahsay–Jones told her, "I'm saying you people are lazy. You people do not want to follow instructions." After Carter sent her complaint letter to Colvin, Kahsay–Jones began making derogatory comments about her weight. In addition, Carter testified, "[Kahsay–Jones] assigned me 10,000 cases with two employees, two supervisors, one clerk. She talked to me in a tone of voice that was very unprofessional. She screamed at me [and] tried to undermine my authority with my staff." In Carter's view, her termination was the culmination of this negative treatment.

DHS takes a different view. It attributes Carter's termination to poor job performance. Her work was already of concern to her supervisors by October 2000 (before Kahsay–Jones became her supervisor), when they placed her on an Individual Performance Plan because her perform-

---

1. We summarize the facts in the light most favorable to Carter. *See, e.g., Board. of Trs. of Univ. of District of Columbia v. DiSalvo,* 974 A.2d 868, 870 (D.C.2009).

2. *See* D.C.Code § 1–608.01 (2001).

3. *See id.* §§ 1–609.51 to –609.58 (2001).

4. The letter claimed that the positions had been filled non-competitively and that selection panels were constituted or utilized improperly, in violation of the Comprehensive Merit Personnel Act and personnel regulations.

ance review indicated that she "[did] not meet expectations." (In her deposition, however, Carter denied ever seeing the Performance Plan and denied signing the second and third pages of the Plan, suggesting that another employee had signed them in her stead.) Thereafter, in April 2001, Carter received the first of a series of memos from Kahsay–Jones complaining about various aspects of her job performance: that the employees Carter supervised were not complying with overtime procedures; that time-sensitive applications were not being processed; and that numerous errors were being made in the processing of the applications. (Carter denied ever having seen any of these memos, however. The record contains two memos responding to the complaints, purportedly from Carter to Kahsay–Jones, but Carter also denied writing them.) In September 2001, Kahsay–Jones recommended that Carter's employment with DHS be terminated.

The recommendation for termination was approved, and on December 17, 2001, Carter received a letter from Ms. Colvin informing Carter of her separation from government service effective as of the close of business on January 2, 2002. The letter stated that "employment in the Management Supervisory Service is terminable at-will and this termination action is neither grievable nor appealable." Carter was directed to return all government property in her possession immediately and was escorted off the premises. After receiving Colvin's letter, Carter applied for a "voluntary immediate retirement," effective January 3, 2002, which was granted. Carter claims that she was "forced to retire."

On February 20, 2002, Carter filed an intake form with the D.C. Office of Human Rights (OHR). She checked boxes on the form indicating that she had suffered discrimination and retaliation based on age and national origin. A few months later, on July 9, 2002, Carter filed a formal complaint with OHR. The complaint charged DHS with having discriminated against her and harassed her on the basis of her national origin and personal appearance; it contained no specific allegations of age discrimination or of retaliation. The complaint remained pending until December 21, 2004, when OHR issued its decision on the merits. OHR determined that DHS had taken adverse employment action against Carter because her job performance was consistently poor, and it found no probable cause to believe that DHS discriminated against Carter or subjected her to a hostile work environment. The decision did not address any claims by Carter of age discrimination or retaliation.[5]

On June 10, 2004, while her administrative complaint still was pending before OHR, Carter filed the instant, four-count complaint in Superior Court. The complaint charged the District with (1) discrimination on the basis of age in violation of the Human Rights Act; (2) retaliation for conduct protected under the Human Rights Act; (3) breach of contract; and (4) common-law wrongful discharge in violation of public policy. In a series of three orders, the Superior Court disposed of each claim. First, on November 28, 2005, Judge Terrell awarded summary judgment to the District on the fourth count on the ground that Carter, an at-will employee, had failed to identify the public policy allegedly infringed by her discharge. Judge

**5.** Eventually, on September 6, 2007, Carter sought review of OHR's adverse decision in Superior Court, arguing, among other things, that the decision should be reversed and the case remanded because OHR failed to address her age discrimination and retaliation claims. The Superior Court denied the petition, finding that Carter had omitted those claims from her OHR complaint. Carter's appeal from the Superior Court's decision is pending in this court (No. 08–CV–1128). It was not consolidated with the instant appeal.

Terrell denied the District's motion for summary judgment as to the other three counts. Thereafter, the case was reassigned to Judge Alprin. On June 14, 2007, Judge Alprin granted summary judgment to the District on Carter's age discrimination and retaliation claims, finding them time-barred by the one-year statute of limitations. He denied summary judgment as to the breach of contract count, citing Judge Terrell's previous order as the law of the case.

The date set for trial on that sole remaining count was Monday, June 25, 2007. There was a flurry of last-minute motions activity. On Friday, June 22, Carter moved to continue the trial date. The next day, Saturday, June 23, the District moved the court to reconsider its denial of summary judgment with respect to the breach of contract count. And on the day of trial itself, Carter filed a motion for leave to amend her complaint to add two new causes of action—one based on the Due Process Clause of the Fifth Amendment, the other on the federal Age Discrimination in Employment Act. The court deferred argument to the following day, Tuesday, June 26.

The only motion argued that day was the District's renewed motion for summary judgment, which Judge Alprin granted. The judge never ruled on Carter's motion for leave to amend her complaint. Although we cannot say for sure, it appears he may not have been made aware of the motion's existence. No one mentioned the motion to amend at the June 26 hearing. At the conclusion of the hearing, when Judge Alprin awarded summary judgment to the District and declared that his ruling "disposes of this case," Carter's counsel did not point out that the motion to amend

the complaint—which, if granted, would have kept the case alive—remained to be considered. Moreover, Carter did not mention her motion to amend the complaint when she moved pursuant to Superior Court Civil Rule 59(e) to alter or amend the judgment and reinstate her claims (a motion the court denied).

## II. The Grants of Summary Judgment

■ Summary judgment is appropriate only when there are no material facts in issue and it is clear that the movant is entitled to judgment as a matter of law. Our review of a grant of summary judgment is de novo.[6]

■ Preliminarily, Carter argues that Judge Alprin violated the "law of the case" doctrine by reconsidering Judge Terrell's denial of summary judgment with respect to the Human Rights Act and contract claims. On appeal, however, absent a showing of procedural unfairness causing prejudice, "the proper inquiry is whether the second trial judge's ultimate disposition was correct, and not whether that ruling was consistent with the first trial judge's holding."[7] The same holds true with respect to Carter's contention that Judge Alprin disregarded the deadlines for dispositive motions set forth in the court's initial scheduling order and the Superior Court Rules of Civil Procedure when he considered the District's summary judgment motions. We perceive no unfair prejudice to Carter from the irregularities of which she complains and no abuse of discretion on the judge's part.

### A. The D.C. Human Rights Act Claims

We first address Judge Alprin's award of summary judgment on Carter's age dis-

6. *E.g., Campbell v. Noble*, 962 A.2d 264, 266 (D.C.2008).

7. *Carter–Obayuwana v. Howard Univ.*, 764 A.2d 779, 792 n. 22 (D.C.2001) (citing *Guilford Transp. Indus. v. Wilner*, 760 A.2d 580, 593–94 (D.C.2000)).

crimination and retaliation claims, the first two counts of her complaint. Carter filed her two Human Rights Act claims in Superior Court two-and-a-half years after the termination of her employment with DHS, well beyond the one-year period prescribed by the applicable statute of limitations.[8] Carter argues that the running of the statute of limitations was tolled by her timely filing of a complaint with OHR, as the statute itself provides.[9] The District argues that this tolling provision is inapplicable because Carter's OHR complaint omitted specific claims of age discrimination and retaliation. Alternatively, the District contends, Carter's assertion of her Human Rights Act claims in Superior Court is barred by her election to pursue the administrative remedy.

█ Whether Carter's age discrimination and retaliation claims should have been considered by OHR is an issue in her pending appeal from the agency's decision, and we need not decide the question here. If her OHR complaint did not encompass those claims, Carter was time-barred from asserting them in her Superior Court action. It would make no sense for the OHR complaint to toll the running of the statute with respect to claims not asserted in that complaint. If, however, Carter did pursue her age discrimination and retaliation claims via her OHR complaint, as she contends she did, then she received no benefit from the statutory tolling provision because she never rescinded her election of the administrative remedy.[10]

█ The D.C. Human Rights Act requires complainants to choose between an administrative or a judicial forum in which to pursue their claims. It provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction ... *unless* such person has filed a complaint hereunder[.]"[11] As we have explained, "[t]he jurisdiction of the court and OHR are mutually exclusive in the first instance. Thus, where one opts to file with OHR, he or she generally may not also file a complaint in court."[12] The statute recognizes two exceptions: the complainant may bring a lawsuit in court "as if no [OHR] complaint had been filed" if (1) OHR dismisses the complaint for "administrative convenience" or (2) the complainant withdraws her OHR complaint before OHR has decided it.[13]

█ Relying on the latter exception, Carter argues that she withdrew her administrative complaint when she filed suit in Superior Court. But to preserve her right to pursue her claims in court, Carter

---

8. D.C.Code § 2–1403.16(a) (2001).

9. *Id.* ("The timely filing of a complaint with the Office ... shall toll the running of the statute of limitations while the complaint is pending.")

10. Thus, we need not reach the District's additional argument that, because Carter's claims arose before October 1, 2002 (the effective date of D.C. Law 14–189, the Human Rights Amendment Act of 2002), she was required to exhaust her administrative remedies before OHR and could not maintain an original civil action in Superior Court instead. *See Williams v. District of Columbia*, 467 A.2d

140, 142 (D.C.1983); D.C.Code § 2–1403.03(b) (2007).

11. D.C.Code § 2–1403.16(a) (emphasis added).

12. *Brown v. Capitol Hill Club*, 425 A.2d 1309, 1311 (D.C.1981).

13. *See* D.C.Code § 2–1403.16(a) ("[W]here the Office [of Human Rights] has dismissed such complaint on the grounds of administrative convenience, or where the complainant has withdrawn a complaint, such person shall maintain all rights to bring suit as if no complaint had been filed."); *see also Brown*, 425 A.2d at 1311.

was obliged to withdraw her administrative complaint "prior to the agency's disposition."[14] That she did not do; she never withdrew her OHR complaint or even notified OHR of her civil lawsuit.[15] Instead, she allowed OHR to proceed to dispose of her complaint on the merits. We hold that to withdraw a complaint from OHR, a complainant must notify OHR that she wishes to do so.

■ Furthermore, OHR did not dismiss Carter's age discrimination and retaliation claims on grounds of administrative convenience. The "key element" of a dismissal for administrative convenience is the agency's exercise of prosecutorial discretion not to commit resources to the claim,[16] for example because the EEOC will handle it,[17] or because OHR concludes that "the complainant can be made whole" without the need for formal proceedings.[18] In the present case, OHR reached a final decision on the merits of Carter's complaint; it did not purport to exercise prosecutorial discretion to limit its consideration of her claims.

Accordingly, we hold that the District was entitled to summary judgment on Carter's age discrimination and retaliation claims under the D.C. Human Rights Act, because those claims were barred either by the statute of limitations or by Carter's election of an administrative remedy.

## B. The Breach of Contract Claim

■ We turn to Judge Alprin's award of summary judgment to the District on the third count of Carter's complaint, which alleged breach of contract. Preliminarily, Carter argues that she was given insufficient time to respond to the District's motion, inasmuch as it was filed on June 23, 2007 (the eve of trial), and heard and decided just three days later. We agree that the judge erred by not allowing Carter ten days to respond.[19] When reviewing the trial court's judgment, however, we disregard "errors or defects which do not affect the substantial rights of the parties."[20] The error in this instance did not affect Carter's substantial rights because, as we shall explain, the grant of summary judgment was appropriate as a matter of law. Thus, the error was harmless.

In her third count, Carter asserted her entitlement to severance pay in connection with the termination of her employment.[21] For the sake of clarity (though it makes no difference to our analysis), we note that Carter's claim is actually statutory, not contractual. MSS employees are at-will and so do not have employment contracts.[22] The statute on which Carter re-

**14.** *Brown,* 425 A.2d at 1312; *accord, Anderson v. U.S. Safe Deposit Co.,* 552 A.2d 859, 860 (D.C.1989).

**15.** Of course, if Carter is deemed to have withdrawn her age discrimination and retaliation claims from OHR by omitting them in her agency complaint after having included them on her intake form, her eventual assertion of those claims in her lawsuit was untimely.

**16.** *Griffin v. Acacia Life Ins. Co.,* 925 A.2d 564, 573–74 (D.C.2007).

**17.** *Id.*

**18.** *Timus v. District of Columbia Dep't of Human Rights,* 633 A.2d 751, 760 (D.C.1993) (en banc).

**19.** *See Puckrein v. Jenkins,* 884 A.2d 46, 52 (D.C.2005); Super. Ct. Civ. R. 12–I(e).

**20.** D.C.Code § 11–721(e) (2001).

**21.** Carter also alleged that the District had failed to accord her the opportunity to retreat to a vacant position within DHS in lieu of being terminated. She has abandoned this claim on appeal. *See generally Grant v. District of Columbia,* 908 A.2d 1173, 1179 (D.C. 2006); D.C.Code § 1–609.54(a) (2001).

**22.** D.C.Code § 1–609.54(a).

lies, D.C.Code § 1–609.54(b), provides that "[e]mployees appointed to the Management Supervisory Service shall be given severance pay in accordance with subchapter XI of this chapter upon separation for non-disciplinary reasons." Subchapter XI required the Mayor to develop a compensation system, with provisions for severance pay, for MSS and other District Government employees.

■ Consequently, in considering Carter's severance pay claim, Judge Alprin looked to the applicable regulations promulgated by the Mayor and set forth in the District Personnel Manual. The judge concluded that those regulations precluded Carter from receiving severance pay because she had opted to retire and receive a retirement annuity. We agree. When Carter was terminated, the Manual expressly stated that "the following employees [including MSS employees] are not entitled to severance pay: ... an employee who, at the time of separation from service, has fulfilled the requirements for an immediate annuity or is receiving an annuity under any District of Columbia ... retirement system[.]" [23] Carter does not dispute that she "fulfilled the requirements for an immediate [retirement] annuity." She merely argues that her retirement was not voluntary. That is not a distinction the District Personnel Manual draws. There is no genuine issue of material fact whether Carter was entitled to severance pay under the Personnel Manu-

al; she was not. The District was entitled to summary judgment on this issue.

## C. The Wrongful Discharge Claim

The fourth count of Carter's complaint was for wrongful discharge in violation of public policy. In some circumstances, we have recognized a common law tort of wrongful discharge "as an exception to the traditional at-will doctrine governing termination of employment, where the discharge violates 'a clear mandate of public policy.'" [24] Carter argues that she comes within this exception because she allegedly was fired for reporting violations of municipal personnel regulations governing hiring and promotion in her June 2001 letter to IMA Director Colvin. Judge Terrell rejected this argument and granted summary judgment to the District on count four on the ground that Carter failed to cite a specific public policy contravened by her discharge.

■ We affirm on a different ground. Carter's conduct in reporting violations fell squarely under the aegis of the District's Whistleblower Protection Act.[25] That Act prohibits a supervisory government employee from taking or threatening to take a "prohibited personnel action" (which includes termination) in retaliation for a "protected disclosure" (which includes disclosure of information to a supervisor that

---

23. District Personnel Manual Issuance System, Instruction No. 11B–23, *Entitlement to and Computation of Severance Pay Resulting from Separations from the Management Supervisory Service and Reductions in Force,* ¶ 3(b)(3) (June 22, 2001). *See also id.* ¶ 2(a) ("An employee of the District government who has been currently employed for at least one year, *who is not eligible for immediate retirement,* and who is separated for non-disciplinary reasons ... is entitled to severance pay as provided in this instruction ...." (emphasis added)).

24. *District of Columbia v. Beretta, U.S.A., Corp.,* 872 A.2d 633, 645 (D.C.2005) (en banc) (quoting *Carl v. Children's Hosp.,* 702 A.2d 159, 164 (D.C.1997) (Terry, J., concurring)); *see also Fingerhut v. Children's Nat'l Med. Ctr.,* 738 A.2d 799, 803–04 (D.C.1999); *Adams v. George W. Cochran & Co.,* 597 A.2d 28, 34 (D.C.1991).

25. D.C.Code §§ 1–615.51 to –615.59 (2001).

the employee reasonably believes evidences a violation of any D.C. law, rule, or regulation).[26] The Act further provides that an employee aggrieved by a prohibited personnel action may bring a civil action for monetary and equitable relief.[27]

Thus, this is not a case where we have any need to create a new exception to the at-will employment doctrine in order to vindicate an important public policy. The Council squarely addressed the issue itself, articulating an express public policy in favor of government employee whistleblowing and creating a specific, statutory cause of action to enforce it. In this situation, our cases require us to defer to the legislature's prerogatives and to decline to recognize a novel, competing cause of action for wrongful discharge at common law.[28] We therefore affirm the grant of summary judgment to the District on Carter's wrongful discharge claim.

### III. The Motion to Amend the Complaint

 Finally, Carter argues that the trial court erred in entering final judgment against her without ruling on her last-minute (day-of-trial) motion for leave to amend her complaint to add claims based on the federal Age Discrimination in Employment Act and the Due Process Clause of the Fifth Amendment. As previously mentioned, Judge Alprin may well have been unaware of the motion. Be that as it may, Carter failed to press for a ruling on it (or even to call it to the judge's attention or renew it in her Rule 59(e) motion). "A party who neglects to seek a ruling on his motion fails to preserve the issue for appeal."[29] We will excuse such a failure "only in exceptional situations and when necessary to prevent a clear miscarriage of justice apparent from the record."[30] Those requirements are not met in this case. Indeed, given Carter's unjustified dilatoriness in moving to amend her complaint,[31] the additional discovery that the new causes of action would have necessitated, and their possible futility,[32] the trial

26. *See id.* §§ 1–615.53 (prohibiting retaliation), 1–615.52(5) (defining "prohibited personnel action"), (6)(D) (defining "protected disclosure").

27. *Id.* § 1–615.54. Carter did not assert a claim under the Whistleblower Protection Act. We note that the cause of action has a one-year statute of limitations, *id.,* meaning that the trial court did not err in failing to construe Carter's wrongful discharge claim as having been brought under the Act—it would have been time-barred.

28. *See McManus v. MCI Commc'ns Corp.,* 748 A.2d 949, 957 (D.C.2000) (rejecting argument that claim of discrimination supports an exception to the at-will employment doctrine because D.C. Human Rights Act already protects the same public policy at stake); *Freas v. Archer Servs., Inc.,* 716 A.2d 998, 1002 (D.C. 1998) (stating that "there is no need" to consider exception to at-will employment where statute allegedly violated "is explicit and may apply directly to [the employer's] alleged [wrongful] discharge . . . ."); *see also Beretta,* 872 A.2d at 645.

29. *Thorne v. United States,* 582 A.2d 964, 965 (D.C.1990); *see also Dada v. Children's Nat'l.*

*Med. Ctr.,* 715 A.2d 904, 907 (D.C.1998) (noting that motion to reopen discovery was "brought sufficiently to the trial court's attention to preserve the point" for appeal where appellant attached it to a motion for reconsideration).

30. *Williams v. Gerstenfeld,* 514 A.2d 1172, 1177 (D.C.1986).

31. Carter clearly knew the facts supporting each of her claims when she filed her initial complaint, because (1) her federal age discrimination claim mirrors the age discrimination claim she initially asserted under the D.C. Human Rights Act, and (2) her Fifth Amendment Due Process claim is based on her allegedly stigmatizing and defamatory treatment when she was terminated and escorted off the premises.

32. We note, for example, that Carter's due process claim is likely subject to the District's one-year statute of limitations for defamation claims. *See* D.C.Code § 12–301(4) (2001); *Doe v. United States Dep't of Justice,* 243 U.S.App. D.C. 354, 376–77, 753 F.2d 1092, 1114–15 (1985).

judge would have "acted well within [his] discretion" had he denied the motion.[33]

*Affirmed.*

---

33. *See Pannell v. District of Columbia*, 829 A.2d 474, 477 (D.C.2003).