## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CONNOR BECKWITH, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:     14-00214 (RC) |
| | : | |
| v. | : | Re Document No.:    27 |
| | : | |
| INTERSTATE MANAGEMENT COMPANY, | : | |
| LLC, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

Connor Beckwith ("Beckwith") was assaulted in a hotel where he was a guest.  In this diversity action, he alleges that the hotel management company was negligent in maintaining security measures and in responding to the assault.  The defendant has moved for summary judgment.  To prevail at trial, Beckwith would need to prove, among other things, that the criminal assault was "so foreseeable that it became [the defendant's] duty to guard against it by adhering to a recognized standard of care." *Clement v. Peoples Drug Store, Inc.*, 634 A.2d 425, 427 (D.C. 1993).  Because Beckwith has not proffered sufficient evidence of either the assault's foreseeability or the standard of care, the Court grants the motion for summary judgment.

## II.  FACTUAL BACKGROUND

In June 2009, Beckwith and his family were guests of the Hamilton Crowne Plaza Hotel in Washington, D.C.  *See* Compl. ¶ 7, ECF No. 1; Def.'s Mem. Supp. Mot. Summ. J. 3, ECF No.

27-1. The hotel was managed by Interstate Management Company, LLC ("Interstate"). Kia Decl. ¶ 2, Def.'s Ex. A, ECF No. 27-2.

On June 28, 2009, Beckwith went to the lower level of the hotel lobby to use the restroom. Upon reaching the lower level, he encountered Anthony Lopez ("Lopez"), who approached and began a conversation with Beckwith, walking alongside him toward the men's restroom. *See* Connor Beckwith Dep. at 10:12–15, 11:4–16, 12:11–13, 13:9–20, Def.'s Ex. B, ECF No. 27-3. Just outside the restroom door, Lopez touched Beckwith on the crotch. *Id.* at 13:21–14:3. Beckwith said nothing, entered the restroom, and went into a stall. *Id.* at 14:12–22, 15:15–17. Lopez followed him into the stall and again touched him on the crotch. *Id.* at 15:10–16:11. Beckwith then told Lopez to leave, and Lopez complied. *Id.* at 16:11–13. After using the restroom and returning upstairs, Beckwith reported the incident to his parents, and his father immediately alerted the hotel's front desk. *See id.* at 16:14–15; Brian Beckwith Dep. at 16:5–9, 17:21–18:2, Def.'s Ex. C, ECF No. 27-4. The hotel's security director, having reviewed security camera footage, found Lopez dining in the hotel's restaurant. *See* Kia Decl. ¶¶ 13–15, Def.'s Ex. A. After Beckwith identified Lopez to the police, Lopez was arrested. *See* Connor Beckwith Dep. at 20:1–4, 23:8–12, Def.'s Ex. B.

At the time of the assault, the hotel had numerous security cameras in place, including one in the lower level of the lobby. Kia Decl. ¶ 8, Def.'s Ex. A. The camera in the lower level captured the hallway near the men's restroom, but the restroom door was slightly off camera. *Id.* ¶ 9. On the day of the assault, the hotel's security director was the only member of the security staff on duty. *Id.* ¶¶ 10–11; Street Dep. at 64:14–19, Def.'s Ex. D, ECF No. 27-5. From 2007 to 2009, there were 542 violent crimes and 4,171 property crimes within a half-mile radius of the hotel. Street Decl. ¶ 5, Pl.'s Ex. A, ECF No. 28-1.

Beckwith subsequently filed a one-count complaint in this Court, alleging that Interstate's negligence in maintaining security at the hotel and in responding to the assault caused him physical and emotional injuries. *See generally* Compl.[1]   Interstate moved for summary judgment on the basis that Beckwith's evidence is insufficient to establish the duty, breach of a standard of care, or proximate causation required to sustain a negligence claim. *See generally* Def.'s Mot. Summ. J., ECF No. 27.

### III.  LEGAL STANDARD

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party moving for summary judgment bears the "initial responsibility" of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In response, the non-moving party must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation and internal quotation marks omitted).

### IV.  ANALYSIS

The parties do not dispute that the tort law of the District of Columbia governs this diversity action.  Under D.C. law, where the plaintiff alleges that the defendant negligently failed to prevent a third party's injurious criminal act, he must prove that the criminal act was "so foreseeable that it became [the defendant's] duty to guard against it by adhering to a recognized standard of care, that [the defendant] breached that standard of care, and that the failure to

---

[1] Although the original complaint named several entities as defendants, the Court subsequently granted a consent motion to substitute Interstate for the original defendants. *See* Consent Order, ECF No. 6 (Mar. 28, 2014).

exercise due care proximately caused" the injury. *Clement*, 634 A.2d at 427; *see also Bd. of Trs. of Univ. of Dist. of Columbia v. DiSalvo*, 974 A.2d 868, 870 (D.C. 2009) (framing elements more generally as "duty, breach of that duty, and injury proximately caused by the breach").

## A. Foreseeability

Interstate is entitled to summary judgment because the undisputed facts do not establish the foreseeability of the assault suffered by Beckwith, as required for showing that Interstate had a duty to conform to a standard of care. *Clement*, 634 A.2d at 427.

In the District of Columbia, a "sliding scale" analysis determines the existence of a duty to protect a plaintiff from intervening third-party criminal acts: The two ends of the scale are (i) the criminal act's foreseeability and (ii) the degree to which the defendant owes a "greater duty of protection" by nature of his relationship to the plaintiff. *DiSalvo*, 974 A.2d at 872 (citing *Workman v. United Methodist Committee on Relief of Gen. Bd. of Global Ministries of the United Methodist Church*, 320 F.3d 259, 264 (D.C. Cir. 2003)). In the absence of a protective relationship, the plaintiff must make a "heightened showing" of the criminal act's foreseeability to establish a duty. *Id.* Conversely, a relationship "entailing a greater duty of protection" lightens the plaintiff's burden to show foreseeability. *Id.*[2]

The parties do not dispute the "sliding scale" formulation. *See* Pl.'s Mem. Resp. 5, ECF No. 28 (citing *DiSalvo*'s "sliding scale" test); Def.'s Mem. Supp. Mot. Summ. J. 8–9 (discussing *DiSalvo* at length). They part ways, however, over whether a special protective relationship is lacking in this case. Although the fact that Beckwith was a guest at the hotel is undisputed, *see*

_____

[2] After endorsing the "sliding scale" formulation of the D.C. Circuit, however, the *DiSalvo* court explained that "even if the [defendant-plaintiff] relationship here did entail a greater duty of protection, we find that to hold [defendant] liable . . . would still require a heightened showing of foreseeability greater than the DiSalvos' showing here." *DiSalvo*, 974 A.2d at 872. This Court need not consider the impact of this dictum: As explained below, even under an ordinary foreseeability standard, Beckwith cannot prevail.

Def.'s Mem. Supp. Mot. Summ. J. 3, neither the D.C. Court of Appeals nor any federal court in this Circuit has squarely addressed liability for third-party criminal acts in the context of an innkeeper-guest relationship. If the innkeeper-guest relationship were one "entailing a greater duty of protection," then Beckwith would not need to make a "heightened showing" of the assault's foreseeability. *DiSalvo*, 974 A.2d at 872.

This Court concludes that Interstate did owe Beckwith a "greater duty of protection" by virtue of their innkeeper-guest relationship, *DiSalvo*, 974 A.2d at 872, taking guidance from the D.C. Circuit's reasoning in *Kline v. 1500 Massachusetts Ave. Apartment Corp.*, 439 F.2d 477 (D.C. Cir. 1970). In that case, Kline was assaulted by an intruder in a common hallway of her apartment, where a similar attack had occurred two months earlier following a decline in security conditions over several years. *Id.* at 478–80. In concluding that Kline's landlord had a duty to protect her from foreseeable criminal acts, the court drew parallels between the landlord-tenant relationship in a modern urban apartment building and the innkeeper-guest relationship at common law. *Id.* at 482–85. The court concluded that for both relationships,[3] the "theory of liability is essentially the same":

> [S]ince the ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of the other, a duty should be imposed upon the one possessing control (and thus the power to act) to take reasonable precautions to protect the other one from assaults by third parties which, at least, could reasonably have been anticipated.

---

[3] While focusing on the innkeeper-guest relationship, the *Kline* court suggested that its analysis would apply in other analogous relationships: "employer-employee, school district-pupil, hospital-patient, and carrier-passenger." *Kline*, 439 F.2d at 482–83; *see also* Restatement (Second) of Torts § 314A(2) (1965) ("An innkeeper is under a similar duty to his guests [as the common carrier's duty to its passengers].").

*Id.* at 483. Applying this reasoning, this Court finds that because a hotel guest's ability to protect himself from a criminal assault in the hotel "has been limited in some way by his submission to the control of" the hotel management company, *id.*, the innkeeper-guest relationship "entail[s] a greater duty of protection," *DiSalvo*, 974 A.2d at 872. In light of this duty to protect, Beckwith need not make a "heightened showing" of foreseeability under the "sliding scale" test. *Id.*[4]

Although Beckwith's burden to establish foreseeability is lightened, he still must make *some showing* that the assault was foreseeable. *DiSalvo*, 974 A.2d at 872 (articulating sliding scale test). As *Kline* teaches, even the plaintiff-guest must establish the foreseeability of the injurious criminal act that the defendant-innkeeper allegedly negligently failed to prevent. *See Kline*, 439 F.2d at 482 ("[T]he innkeeper is generally bound to exercise reasonable care to protect the guest from abuse or molestation by third parties . . . *if the attack could, or in the exercise of reasonable care, should have been anticipated*." (emphasis added)). The D.C. Court of Appeals, likewise, has repeatedly required a showing of foreseeability, notwithstanding a

---

[4] Although not itself a decision of the D.C. Court of Appeals, *Kline* is especially persuasive because it binds the D.C. Court of Appeals. *See M. A. P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) ("As a matter of internal policy, we have adopted the rule that no division of this court will overrule a prior decision of this court or refuse to follow a decision of the United States Court of Appeals rendered prior to February 1, 1971, and that such result can only be accomplished by this court en banc."); *accord Spar v. Obwoya*, 369 A.2d 173, 179 n.5 (D.C. 1977) ("[*Kline*] was rendered in 1970 and hence binding on this court . . . .").

Additionally, the fact that Beckwith's injury occurred in and near the lower level lobby restroom, as opposed to his guest room, does not weaken Interstate's protective duty. *Cf. Banks v. Hyatt Corp.*, 722 F.2d 214, 219 (5th Cir. 1984) (explaining, in a case where defendant argued that a building owner had no duty to prevent a criminal assault occurring on "a public sidewalk outside the building," that *Kline* found liability for assault in a common hallway, and that there were accordingly no "physical limitations on a landlord's duty of care to his tenants," but rather "an affirmative duty to take precautionary measures in areas within the landlord's control"). Even assuming *arguendo* that Interstate had a weaker duty to protect Beckwith given the location of this particular assault, the Court's analysis would be unchanged. Under *DiSalvo*'s sliding scale test, a weaker protective duty would require a correspondingly heightened showing of foreseeability. *See DiSalvo*, 974 A.2d at 872. Here, the Court holds that even under an ordinary foreseeability standard, Beckwith's evidence is insufficient.

stronger protective relationship between plaintiff and defendant. *See, e.g.*, *WMATA v. O'Neill*, 633 A.2d 834, 840 (D.C. 1993) ("But where a special relationship exists, such as between a common carrier and its passengers, the carrier undeniably has a duty to protect its passengers from *foreseeable* harm arising from criminal conduct of others." (emphasis added)); *Graham v. M & J Corp.*, 424 A.2d 103, 105 (D.C. 1980) ("*Foreseeability* is the key element establishing the landlord's duty [to maintain the safety of common areas under his control]." (emphasis added)); *Spar v. Obwoya*, 369 A.2d 173, 177 (D.C. 1977) (upholding trial court determination that landlords had duty to maintain safety of common area, given that they were "on *notice of the likelihood* of unauthorized entry into the building by persons with criminal intent" (emphasis added)).[5]

Here, Beckwith has not proffered adequate evidence of the assault's foreseeability. Beckwith relies exclusively on these crime statistics: From 2007 to 2009, 542 violent crimes and 4,171 property crimes occurred within a half-mile radius of the hotel. Street Decl. ¶ 5, Pl.'s Ex. A; Pl.'s Mem. Resp. 6. On the basis of these figures, Beckwith asks the Court to conclude that "it was foreseeable that an intruder would come on the premises." Pl.'s Mem. Resp. 6–7.[6] But if these crime statistics alone were enough to establish the assault's foreseeability, any assault in any area with a non-negligible crime rate—presumably many densely populated metropolitan

---

[5] Applying D.C. law in a diversity action involving a guest-on-guest attack in a luxury hotel, a panel of the Seventh Circuit criticized as "legal mumbo-jumbo" the rule that a "heightened foreseeability" requirement attaches in cases involving an intervening criminal act, instead opting for the "practical question" of "whether the defendant knows or should know that the risk is great enough, in relation to the cost of averting it, to warrant the defendant's incurring the cost." *Shadday v. Omni Hotels Mgmt. Corp.*, 477 F.3d 511, 513 (7th Cir. 2007) (Posner, J.). By its distinctive approach, the *Shadday* panel reached the same outcome as this Court, reasoning that "[u]nder any standard" of foreseeability, *id.* at 514—heightened or not—the plaintiff "failed to present enough evidence" that the defendant was negligent, *id.* at 518.

[6] The complaint alleges that these reported crimes include offenses of a sexual nature. *See* Compl. ¶ 22(b). Nothing in the record substantiates this allegation.

areas—would likewise be foreseeable.  This is not the law.  *See Kline*, 439 F.2d at 483

(distinguishing between "possible" crimes, which are ubiquitous and innumerable, and those

crimes that are "foreseeable" under the law—those that are both "probable and predictable").

Even assuming that the crime rate cited by Beckwith was extraordinarily high (there is no

evidence to this effect), and that an assault by an intruder was foreseeable, the Court finds no

evidence suggesting that Lopez was actually an intruder.  To the contrary, the fact that the

security director found Lopez dining in the hotel's restaurant following the assault suggests that

he was an invitee of the hotel.   *See* Kia Decl. ¶¶ 13–15, Def.'s Ex. A; *cf. Shadday v. Omni

*Hotels Mgmt. Corp.*, 477 F.3d 511, 516 (7th Cir. 2007) ("At most, . . . crime conditions in the

[hotel's] neighborhood are relevant to the risk of a criminal intrusion into the hotel, not to the

risk posed by one hotel guest to another.").

Beckwith correctly "concedes that there is no specific history or pattern of sexual assaults

in the hotel."  Pl.'s Mem. Resp. 6.  Only one other assault occurred in the hotel between 2007

and 2009—a December 2008 incident in which a male guest grabbed and slapped a female

member of the hotel's housekeeping staff while she was cleaning his room.  Incident Report,

Def.'s Ex. E, ECF No. 27-6.  All other crimes within the hotel were non-violent room thefts.  *See*

Street Dep. at 55:12–59:21, Def.'s Ex. D.  In *Obwoya*, the D.C. Court of Appeals determined that

a robbery and shooting in an apartment's common hallway was rendered foreseeable by

"sufficiently related" evidence of one prior assault in the same hallway, burglaries of apartment

units by force from the hallway, and the presence of "unauthorized persons" in the apartment.

*Obwoya*, 369 A.2d at 177.  The landlord had been placed "on notice"; the prior incidents and

vulnerabilities made "the possibility of harm [to the tenant] . . . clear to the ordinary prudent

eye."  *Id.*; *see also Graham*, 424 A.2d at 106 (holding that "minor acts of trespass and

vandalism," "neighborhood . . . high in criminal activity," frequent past complaints about a faulty outer door lock, and a previous attempted robbery created a "triable issue of fact as to whether the danger of a criminal assault by means of arson" was foreseeable). By contrast, Beckwith has presented no "sufficiently related" evidence that put Interstate on notice of the risk of sexual assault in the lower level of the lobby. *Obwoya*, 369 A.2d at 177.[7]

The Court certainly does not hold that the attack on Beckwith was necessarily unforeseeable merely by virtue of its location or the fact that another guest was the perpetrator. Nor must Beckwith show that Interstate had prior "notice of the particular method" of his assault. *Id.* Rather, the Court concludes only that Beckwith had the burden to proffer evidence of the assault's foreseeability, and the surrounding area's crime rate and unrelated past incidents in the hotel simply do not suffice. *Cf. Woods-Leber v. Hyatt Hotels of Puerto Rico, Inc.*, 124 F.3d 47, 51 (1st Cir. 1997) ("We do not mean to imply that, merely because a rabid mongoose had never before invaded the premises and bitten a guest, the attack could not have been foreseen. . . . But here, the plaintiff offered no evidence to support a finding of foreseeability . . . .").

In the end, Beckwith wants this Court to impute the assault's foreseeability to Interstate without determining whether the evidence actually establishes foreseeability under the "sliding scale" test. *See* Pl.'s Mem. Resp. 6 ("Interstate should be charged with a heightened level of foreseeability . . . .") This the Court cannot do. *See Workman*, 320 F.3d at 265 ("Sitting in diversity, . . . our task is to apply the law of the District of Columbia as its own courts would

---

[7] Beckwith's expert testimony about inadequate security measures primarily bears on the standard of care, as discussed below. Here, the Court notes that this testimony cannot establish foreseeability: Even if the hotel's security measures were inadequate, there is no evidence that the hotel had notice of any "failed security measures" that were immediately "threatening" the safety of its guests. *Bruno v. W. Union Fin. Servs., Inc.*, 973 A.2d 713, 721 (D.C. 2009) (distinguishing "far more threatening" signs of a "broken gate and broken doors" at a school where a student was abducted and raped, from mere "speculat[ion] [about] whether security cameras would have provided the deterrent effect necessary to prevent" a gas station assault).

apply it . . . .").  Because Beckwith's evidence does not establish the assault's foreseeability, he cannot show that Interstate owed him a duty to prevent the assault by adhering to a standard of care.  *Clement*, 634 A.2d at 427.  Thus, his negligence claim cannot survive summary judgment.

## B.  Standard of Care

In the alternative, even if the assault were foreseeable, summary judgment would be appropriate because Beckwith's evidence does not establish the requisite standard of care.  *See Clement*, 634 A.2d at 429–30 (citing insufficient standard-of-care evidence, rather than lack of foreseeability, as basis for affirming grant of summary judgment to defendant) (Schwelb, J., concurring).

Lack of evidence sufficient to establish a standard of care is "fatal to a negligence claim" under D.C. law.  *Briggs v. WMATA*, 481 F.3d 839, 841 (D.C. Cir. 2007) (citation omitted).  Where "the defendant is alleged to have failed to protect the plaintiff from harm, the expert must 'clearly articulate and reference a standard of care by which the defendant's actions can be measured.'"  *Varner v. District of Columbia*, 891 A.2d 260, 269 (D.C. 2006) (citation and emphasis omitted).  Moreover, "[a]n expert may not rely upon a general duty of care to establish an objective standard requiring specific conduct."  *Id.* at 273 (faulting plaintiff's expert, who cited university's general duty to protect its students, for failure to "identify any specific standard of care" requiring university to share certain information with police during a homicide investigation, which information might have prevented the second homicide underlying plaintiff's action).  Nor may the plaintiff rely on "[a]n expert's own conclusory opinion . . . without any showing that the proffered standard has been promulgated or is generally known . . . ."  *Briggs*, 481 F.3d at 847 (internal citations, alterations, and quotation marks omitted).  Similarly, the expert's opinion "as to what he or she would do under similar circumstances"

cannot suffice to establish a standard of care. *Id.* at 846 (quoting *Clark v. District of Columbia*, 708 A.2d 632, 635 (D.C. 1997)).

To establish the applicable standard of care, Beckwith proffers the expert testimony of Andre Street, a Baltimore hotel's security director. *See* Street Decl. ¶ 1, Pl.'s Ex. A. In his deposition, Street explained that there are no mandatory national standards concerning hotel security measures. *See* Street Dep. 41:3–18, Def.'s Ex. D. Nor, according to Street, does any government entity regulate a hotel's placement of security cameras or the number or location of its security guards. *Id.* at 42:3–5. But turning to his "honest opinion[s]" of the hotel in this case, Street claimed that "one [security officer on duty] is definitely inadequate" for securing the hotel, *id.* at 64:14–19, that a security guard should have patrolled the lower level lobby restroom area "at least a couple times an hour," and that someone should have been monitoring the security cameras constantly, *id.* at 66:1–6.[8] His declaration also clarified his deposition statements: Although there are no "statutes," "ordinances," "written laws," or "regulations" bearing on hotel security measures, there were hospitality industry "best practices" and "many articles by security experts" that articulate "certain minimum standards that a prudent head of security should follow." Street Decl. ¶¶ 3, 4, Pl.'s Ex. A.

None of Street's statements "clearly articulate and reference a standard of care by which [Interstate's] actions can be measured." *Varner*, 891 A.2d at 269 (citation and emphasis omitted). His vague, passing references to "best practices," "articles by security experts," and "certain minimum standards," shed no light on the substantive *content* of any standard of care. Street Decl. ¶¶ 3, 4, Pl.'s Ex. A. Without more, these "generalized references" to industry

---

[8] Similarly, in his declaration, Street claimed that "in [his] opinion," Interstate should have deployed "more frequent security patrols and should have had someone monitoring the close[d] circuit television system at all times." Street Decl. ¶ 6, Pl.'s Ex. A.

standards cannot suffice. *Briggs*, 481 F.3d at 846.[9] Moreover, Street concedes that there are no uniform national standards governing hotel security measures. *See* Street Dep. 41:3–18, Def.'s Ex. D. Likewise, he does not point to any "objective standard requiring specific conduct" pertaining to the placement or monitoring of security cameras or the deployment of security staff. *Varner*, 891 A.2d at 273; *see also Briggs*, 481 F.3d at 847–48 (rejecting, in a wrongful death suit alleging the negligent failure to adequately illuminate and ensure visibility of area around a subway station, the adequacy of a general security design concept promoting increased visibility as standard-of-care evidence, and concluding that the plaintiff's expert cited "no national security standard for lighting" or "the appropriate timing for the removal of construction fencing").[10]

Beckwith relies, however, on Street's claim that the major hotel chains operating in the Baltimore and Washington, D.C., areas have fairly uniform *procedural* policies requiring that the design of each hotel's security infrastructure be informed by an assessment of its unique attributes and vulnerabilities. *See* Street Dep. at 42:12–43:21, 50:16–21, Def.'s Ex. D; *see also* Pl.'s Mem. Resp. 8 (contending that Street testified to the practice of placing security cameras "after an assessment of the property to determine where vulnerabilities exist"). The complaint appears to make out a claim that Interstate did not adhere to these procedures, alleging that it "[f]ailed to provide security in accordance with custom and practice in the industry including the

---

[9] Even if Street had elaborated, "best practices" in particular could not constitute the standard of care, given that under D.C. law, "[a]spirational" industry standards cannot suffice. *Briggs*, 481 F.3d at 848 (quoting *Varner*, 891 A.2d at 272).

[10] Beckwith further contends that the law does not require standards of care to be "written." Pl.'s Mem. Resp. 9–10. But the Court does not hold that the standard of care must be written, given that Street's testimony does not establish *any* applicable standard of care—written or not.

inability to understand and anticipate the level of crime within a several mile radius of the hotel and the number of registered sex offenders living in the vicinity in June 2009." Compl. ¶ 22(e).

To the extent that Beckwith invokes this "procedural" standard of care, his claim would still not survive summary judgment. First, Street's experience with hotels in the Baltimore and Washington, D.C., areas cannot be the basis of a "nationally recognized" standard of care. *Briggs*, 481 F.3d at 846 (quoting *Clark*, 708 A.2d at 635). Second, Street's testimony was limited to the practices of "major chain[s]," and there is no evidence that those entities alone can define the national standard of care for the hospitality industry as a whole. Street Dep. at 42: 9–11, 45:13–46:4, Def.'s Ex. D; *cf. Moltner v. Starbucks Coffee Co.*, No. 08 CIV. 9257 (LAP), 2009 WL 3573190, at *9 (S.D.N.Y. Oct. 23, 2009), *aff'd*, 399 F. App'x 630 (2d Cir. 2010) (finding insufficient evidence on metropolitan New York coffee or tea shops' standard of care in serving hot beverages, where expert was familiar "only with major fast-food chains"). Lastly, even assuming (without deciding) that Beckwith's evidence shows that a national standard of care required Interstate to follow certain procedures *when it designed the hotel's security measures*, the Court finds no evidence supporting Beckwith's allegations that Interstate failed to adhere to those procedures, and to survive summary judgment, he must "go beyond the pleadings." *Celotex*, 477 U.S. at 324 (citation and internal quotation marks omitted).

In the end, Street offers only his own "opinion" that Interstate's security measures were inadequate in various ways—that it should have had more on-duty security officers, more patrols, and more monitoring of cameras. *See* Street Dep. at 64:14–19, 66:1–6, Def.'s Ex. D; Street Decl. ¶ 6, Pl.'s Ex. A. But standing alone, "[a]n expert's own conclusory opinion," *Briggs*, 481 F.3d at 847 (citation and internal quotation marks omitted), "as to what he or she would do under similar circumstances," *id.* at 846 (citation omitted), cannot save Beckwith from

summary judgment.  Because inadequate standard-of-care evidence is "fatal" to Beckwith's negligence claim, the Court would grant summary judgment to Interstate even under the *arguendo* assumption that the assault was foreseeable.  *Briggs*, 481 F.3d at 841 (citation omitted).[11]

## V.  CONCLUSION

For the foregoing reasons, Interstate's motion for summary judgment (ECF No. 27) is **GRANTED**.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 4, 2015

RUDOLPH CONTRERAS
United States District Judge

---

[11] Because the Court finds deficient Beckwith's evidence of foreseeability and standard of care, it need not decide whether his evidence can establish proximate causation.  *See Clement*, 634 A.2d at 427.  The Court observes, however, that proximate causation also hinges on foreseeability.  *See Workman*, 320 F.3d at 265.  Besides foreseeability, proximate causation also requires causation-in-fact, *see Smith v. District of Columbia*, 413 F.3d 86, 102–103 (D.C. Cir. 2005), and here, there is no evidence, beyond Street's speculation, that the assault would have been averted but for Interstate's alleged negligence, *cf. Shadday*, 477 F.3d at 516 ("Had there been a security camera [inside the elevator], the rape would have been completed long before a guard, alerted by what the camera showed, would have arrived on the scene . . . ."); Street Dep. at 72:5–8, Def.'s Ex. D ("I feel strongly had the patrol been there and been adequate enough, it would have strongly probably would have [sic] persuaded Mr. Lopez from committing the act that he did.").