*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 23-CV-0278

LAUREN SZYMKOWICZ, *et al.*, APPELLANTS,

v.

PRESIDENT AND DIRECTORS OF THE COLLEGE OF GEORGETOWN UNIVERSITY, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2022-CA-003391-B)

(Hon. Maurice A. Ross, Motions Judge)

(Argued April 8, 2025                            Decided June 12, 2025)

*John T. Szymkowicz* for appellant.

*Jeremy W. Brinster*, with whom *Bruce M. Berman* and *Natalie Kirchhoff* were on the brief, for appellee.

Before BECKWITH, DEAHL, and SHANKER, *Associate Judges*.

BECKWITH, *Associate Judge*: Lauren and John Paul Szymkowicz sued Georgetown University, alleging that their next-door neighbor—a Georgetown undergraduate student—repeatedly caused secondhand smoke to migrate into their home. Their complaint included tort and breach-of-contract claims, alleging that the

university had not adequately investigated or prevented the smoke. The trial court granted Georgetown's motion to dismiss, ruling that the university owed no duty to the Szymkowiczes and had not formed a contract. We affirm.

## I. Background

According to the complaint, Lauren and John Paul Szymkowicz live near the main campus of Georgetown in a duplex-style townhouse that shares a wall with the adjoining property. For about three months in the fall of 2021, a Georgetown undergraduate student lived in the next-door residence and repeatedly caused secondhand smoke to migrate into the Szymkowiczes' home, depriving them of sleep, causing them headaches, coughs, and burning sinuses, and exacerbating Ms. Szymkowicz's asthma. The couple spoke directly to the student and her roommates about the issue, but the smoke continued.

The Szymkowiczes reached out to Georgetown several times throughout the fall, variously texting, calling, and emailing the Office of Neighborhood Life and its director at all hours of the day and night and making complaints to the Georgetown Student Neighborhood Assistance Program, which usually rerouted their concerns to the police.[1] The Director of the Office of Neighborhood Life discussed the issues

---

[1] Although the officers from the Georgetown University Police Department

with the Szymkowiczes "at length," twice visited their home, went to the student's townhome to try to speak to her, and sent another Georgetown employee to try to speak to the student as well. Georgetown eventually scheduled a meeting between the student and the student affairs office. After the student left for the winter holidays at the end of the fall semester, Georgetown moved her to different off-campus housing.

The Szymkowiczes sued Georgetown, raising claims of negligence, negligent infliction of emotional distress, public and private nuisance, and breach of contract and seeking more than a million dollars in compensatory and punitive damages. The couple alleged that Georgetown's duty of care and its contractual obligations arose out of two documents—Georgetown's campus plan and the order of the Zoning Commission approving that plan—that, according to the couple, require "the University to mitigate the impacts of student behavior on the surrounding neighborhood."

At a hearing on Georgetown's motion to dismiss, the judge concluded that Georgetown (1) did not owe a duty of care to the Szymkowiczes, (2) was not in control of any nuisance caused by the student's smoking, and (3) did not have a

---

and the Metropolitan Police Department visited the homes and verified the smoky smell, they told the Szymkowiczes that they were not empowered to act on the complaint because of department policy.

contract with the District of Columbia under which the Szymkowiczes could sue. Holding that the university therefore could not be liable to the couple, the court granted the motion to dismiss. The Szymkowiczes appealed.

## II. Analysis

We review the grant of a motion to dismiss de novo, construing the complaint in the light most favorable to the nonmovant—here, the Szymkowiczes—and taking all factual allegations as true. *Poola v. Howard Univ.*, 147 A.3d 267, 276 (D.C. 2016). The Szymkowiczes argue that Georgetown is liable for negligence because it owed and breached a duty of care to (1) investigate the Szymkowiczes' complaints, (2) follow the procedures and enforce the requirements in the Code of Student Conduct that prohibited the student's behavior, and (3) protect the couple from the secondhand smoke caused by the student.[2] To prove liability for negligence, the plaintiff must show the existence of "a duty, breach of that duty, and injury proximately caused by the breach." *Bd. of Trs. of Univ. of D.C. v. DiSalvo*, 974 A.2d 868, 870 (D.C. 2009); *Tolu v. Ayodeji*, 945 A.2d 596, 601 (D.C. 2008). The existence of a duty is purely a question of law that we review de novo. *Tolu*,

---

[2] They also argued that they had "standing to bring this civil action" under D.C. Code § 6-641.09(a), which permits "any neighboring property owner" who is "specially damaged" by a zoning violation to seek injunctive relief, in addition to "all other remedies provided by law." We do not evaluate the standing arguments because, even assuming the Szymkowiczes have standing, their claims fail on the merits.

945 A.2d at 601. The Szymkowiczes argue that Georgetown assumed a duty of care when it adopted its campus plan and sought the Zoning Commission's approval of that plan.[3]

---

[3] Although tort duties often arise under common law, the Szymkowiczes' briefing arguably abandoned any common law basis for the duty they allege Georgetown owed, though they denied making such a concession at oral argument. Regardless, Georgetown does not owe a common law duty of care to the Szymkowiczes. Typically, a party does not incur liability for failing to act, *see Freyberg v. DCO 2400 14th St., LLC*, 304 A.3d 971, 978 (D.C. 2023), and "there is no general duty in tort law 'to control the conduct of a third person as to prevent him from causing physical harm to another,'" *Hoehn v. United States*, 217 F. Supp. 2d 39, 45-46 (D.D.C. 2002) (quoting Restatement (Second) Torts § 315 (1965)). Such a duty can arise only if an actor has "some relation" with the injured party or has taken "some antecedent action . . . for the other's protection or assistance." Restatement (Second) of Torts ch. 12 scope note to topic 4 (1965). Accordingly, a university may owe a duty of care to protect its *own* students, *see, e.g.*, *Barlow v. State*, 540 P.3d 783, 785, 787 (Wash. 2024) (recognizing a university's duty to protect students "who are on campus for school related purposes" from harm "at the hands of other students"); *DiSalvo*, 974 A.2d at 870-73 (analyzing whether the university was liable for a stranger's criminal act causing harm to a student on campus), but not others.

Indeed, the Szymkowiczes provide no examples in which a court has held that a university owed a duty to a non-student third party harmed by a student's off-campus conduct or any reason we should impose such a duty. *Cf. Barlow*, 540 P.3d at 787-89 (limiting a university's duty to students' on-campus conduct because "[t]he university simply has no authority to dictate the actions of students away from campus"). This duty, as we explain further *infra* pp. 8-9, would sweep too broadly, permitting lawsuits against universities by, for example, a tourist who is bothered by fireworks shot off by a student on a Saturday night or a pedestrian who is struck by a student driving to a concert. "The class to whom [Georgetown] allegedly owed a duty here is potentially unlimited except by the population" that lives within some indeterminate proximity to a Georgetown student. *District of Columbia v. Beretta,*

A campus plan is "the first stage" of a university's bid for a special zoning permit in a residential area and "describes its general intentions for new land use over a substantial period." *President & Dirs. of Georgetown Coll. v. D.C. Bd. of Zoning Adjustment*, 837 A.2d 58, 66 (D.C. 2003) (quoting *George Washington Univ. v. D.C. Bd. of Zoning Adjustment,* 831 A.2d 921, 928 (D.C. 2003)). Here, Georgetown's campus plan acknowledges that "residents of the neighborhoods surrounding the campus are not only stakeholders but critical partners" of Georgetown and states that Georgetown will consider "feedback received from neighbors."

The Zoning Commission issues an order approving a campus plan, often with certain conditions, if it determines that the uses "are not likely to become objectionable to neighboring property." 11-X D.C.M.R. § 101.2. Here, the Zoning Commission approved Georgetown's campus plan and added conditions requiring, among other things, that the university commit resources to "mitigate the impacts of . . . student behavior," prohibit "students who have engaged in serious or repeated misconduct" from living off-campus, "investigate reports of improper off-campus

---

*U.S.A., Corp.*, 872 A.2d 633, 643 (D.C. 2005). Georgetown does not, therefore, owe a duty of care arising under common law to third parties, including the Szymkowiczes.

student conduct," and respond to Code of Student Conduct violations[4] "promptly with appropriate sanctions."

These documents do not reflect that Georgetown has taken on a duty of care to protect neighbors of the university's off-campus students. The campus plan may—if any intention can be derived from it beyond mere compliance with zoning regulations—speak to a high-level goal of consensus-building with community partners, but it contains nothing more specific from which to glean a duty to the Szymkowiczes in particular. To impose a duty on Georgetown based on its campus plan "would create the perverse incentive for universities . . . to write their manuals in such a manner as to impose minimal" responsibilities upon themselves and avoid civil liability. *Varner v. District of Columbia*, 891 A.2d 260, 271-72 (D.C. 2006) (internal alterations omitted); *cf. id.* ("Aspirational practices do not establish the standard of care which the plaintiff must prove in support of an allegation of negligence."). The Zoning Commission's order also does not give rise to tort liability—the Commission simply follows its regulatory mandate, analyzing the campus plan against zoning regulations and maps with the express purpose of

---

[4] The Code of Student Conduct prohibits disorderly conduct and the possession and use of marijuana and describes how "[a]ny individual" may file a formal complaint by contacting the Office of Student Conduct, which is empowered to "determine the most appropriate manner to handle each individual complaint."

"determin[ing]" whether the university's plan would "affect adversely the use of neighboring property." 11-X D.C.M.R. § 101.14. Likewise, the Code's disciplinary provisions reinforce Georgetown's discretion over the handling of student-neighbor issues and do not create an enforceable right to certain actions or outcomes. *Cf. Varner*, 891 A.2d at 266-67 (declining to recognize acts of misconduct listed in the university's student handbook as a standalone basis for establishing the applicable standard of care in a negligence claim).

Additionally, as a matter of public policy, imposing such a sweeping duty would be unwise. *See DiSalvo*, 974 A.2d at 871 & n.2 (explaining that the determination whether a duty exists is based on "a variety of considerations," including "policy decisions made by the courts and the legislatures" (quoting *Williams v. Baker*, 572 A.2d 1062, 1064 (D.C. 1990) (en banc))). We have been "cautious in extending liability to defendants for their failure to control the conduct of others." *Beretta*, 872 A.2d at 644 (ellipsis omitted) (quoting *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1061 (N.Y. 2001)). And particularly in the area of student discipline by universities, "we are obliged to tread carefully and exercise restraint." *Varner*, 891 A.2d at 270. Just as we "respect the authority of a university to select the appropriate discipline" for a student's rule violation, *id.*, we respect the university's authority to select how to address a student's potential rule violation. The Szymkowiczes essentially contend that the university could owe a duty to *any*

neighbor of *any* student for that student's conduct—even legal, off-campus conduct—and we decline to recognize such a "limitless notion[] of duty."[5] *Beretta*, 872 A.3d at 643; *see supra* note 3.

As for the Szymkowiczes' public and private nuisance claims,[6] liability can arise only when "the defendant is in control of the instrumentality alleged to constitute a nuisance." *Id.* at 648 (quoting *Tioga Pub. Sch. Dist. #15 v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993)). Though a university has certain requirements and privileges associated with enrollment, it is not "in control of" its students, particularly when students are off campus. *Id.*; *see Barlow*, 540 P.3d at 787-89 (describing how university students still "have the ability to choose how to spend their time" and can, for example, "take part in extracurricular activities, work, live independently, marry, take up hobbies, and choose with whom to interact"). The Szymkowiczes may be correct that legal conduct such as smoking marijuana in an

---

[5] Because the Szymkowiczes cannot establish that Georgetown owed them a duty of care, they cannot establish a claim of negligent infliction of emotional distress—Georgetown did not have any "obligation to care for the plaintiff's emotional well-being" and did not have a special relationship or specific undertaking that "necessarily implicate[d] the plaintiff's emotional well-being," as is required for the claim. *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810-11 (D.C. 2011).

[6] While public nuisance is "an unreasonable interference with a right common to the general public," private nuisance is "a substantial and unreasonable interference with private use and enjoyment of one's land." *Tucci v. District of Columbia*, 956 A.2d 684, 696 & n.11 (D.C. 2008) (quoting *B & W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881-82 (D.C. 1982)).

adjoining property *can* be the basis of a nuisance claim,[7] but they did not bring their nuisance claim against the person causing the smoke to migrate into their home. Georgetown was not in control of the student and did not cause the smoke—indeed, the smoke was ongoing for several weeks before the Szymkowiczes even notified Georgetown about it. As a result, the nuisance claims fail.

Finally, the Szymkowiczes argue that the campus plan and the Zoning Commission's order "represented a valid contract" between the District of Columbia and Georgetown, but we disagree. The existence of an enforceable contract is a question of law that we review de novo. *United House of Prayer for All People v. Therrien Waddell, Inc.*, 112 A.3d 330, 338, 342-43 (D.C. 2015). Contract formation requires both an "agreement as to all the material terms" and an "intention of the parties to be bound." *SJ Enters., LLC v. Quander*, 207 A.3d 1179, 1183 (D.C. 2019) (quoting *Kramer Assocs., Inc. v. Ikam, Ltd.*, 888 A.2d 247, 251 (D.C. 2005)). As described *supra* at pages 6-8, the campus plan and Zoning Commission order are creatures of zoning law, legally required for the university to operate in certain residential zones and guided by the goal of being "in harmony" with zoning

---

[7] In support of this argument, they cite only to *Ippolito-Shepherd v. Farserotu*, No. 21-CV-0172, Mem. Op. & J. at 3-4 (D.C. Dec. 23, 2021), an unpublished, nonprecedential decision by our court. Except in situations not applicable here, "[u]npublished orders or opinions of this court may not be cited in any brief." D.C. App. R. 28.

regulations. 11-X D.C.M.R. § 101.14. The Szymkowiczes have provided no support for the theory that documents created to comply with administrative requirements constitute a contract with the administrative body or the government to which they are submitted. And the Zoning Commission's approval of the campus plan did not create a contract as it did not constitute a "meeting of the minds" of the parties or "evince[] their mutual intent to be bound." *United House of Prayer for All People*, 112 A.3d at 338, 342-43 (quoting *Kramer Assocs.*, 888 A.2d at 252). Rather, it was a unilateral decision by a government agency based upon regulatory criteria. *See Glenbrook Rd. Ass'n v. D.C. Bd. of Zoning Adjustment*, 605 A.2d 22, 26, 30 (D.C. 1992) ("The Board's discretion to grant special exceptions is limited to a determination whether the exception sought meets the requirements of the regulation." (quoting *Stewart v. D.C. Bd. of Zoning Adjustment,* 305 A.2d 516, 518 (D.C. 1973))). Because no contract was formed as a matter of law, the Szymkowiczes' contract claim was properly dismissed.[8]

### III. Conclusion

For these reasons, we affirm the Superior Court's order granting the motion to dismiss.

---

[8] The couple's contention that they, as intended beneficiaries of this alleged contract, are empowered to sue over the breach of it fails because no contract existed.

*So ordered.*